The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on 19 August 1993, a Supplemental Memorandum of Agreement as to Payment of Compensation, approved by the Industrial Commission on 25 April 1996, in a Pre-Trial Agreement and at the hearing as:
STIPULATIONS
1. On 2 June 1993, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Hartford Accident and Indemnity Company was the workers' compensation insurance carrier on the risk.
4. On 2 June 1993, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
5. As a result of his injury, plaintiff was temporarily totally disabled from 2 June 1993 through 4 January 1995 when he returned to work for defendant-employer earning wages that were variously less than the wages he earned prior to 2 June 1993.
6. Plaintiff's average weekly wage was $360.00.
7. An indexed set of plaintiff's medical records, consisting of exhibits A through I, is admitted into evidence.
* * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a married male, thirty-six years old. Plaintiff is a high school graduate. His work history consisted primarily of employment as a manual laborer. He has a speech impediment that makes him difficult to understand.
2. Defendant-employer was in the asbestos removal business. The duties of plaintiff's position as an asbestos remover included the lifting and carrying of bags of debris containing asbestos. While lifting a bag of debris on 2 June 1993, plaintiff sustained a herniated disc at L4-L5.
3. Plaintiff's herniated disc caused low back pain and predominately left leg pain. On 29 September 1993, Dr. Appert performed a laminectomy and excision of plaintiff's herniated disc. Following his surgery, plaintiff experienced unrelenting sciatica. Plaintiff's continued sciatica was caused by a portion of the extruded disc that was not removed during his 29 September 1993 surgery.
4. Due to these persistent symptoms, plaintiff was referred to Dr. Rich for a second opinion. Dr. Rich detected the remaining extruded disc fragment underneath plaintiff's level L4-L5 facet. This remaining fragment was causing plaintiff left leg pain.
5. On 18 May 1994, plaintiff underwent a second discectomy at level L4-L5 with a fusion at the same level utilizing Steffie plates, pedicle screws and a bone graft. The discectomy was performed by Dr. Rich and the fusion was performed by Dr. Fajgenbaum.
6. Following his surgery, plaintiff continued under the care of Dr. Rich who prescribed various medications and recommended walking as a form of exercise. By 8 August 1994, plaintiff's recuperation was progressing well and he was walking approximately one mile per day. He continued to have occasional left leg pain for which Dr. Rich prescribed medications.
7. In Dr. Rich's opinion, the plaintiff's prior employment as an asbestos remover was not very good for his back. According to Dr. Rich, a well chosen job for the plaintiff would include light lifting using the arms only, would not require any bending or twisting at the waist particularly to lift no matter how light the object, would consist of sedentary activities, and would allow him to sit mostly but would also allow him to get up and walk around and change positions from time to time. Plaintiff did return to work for defendant-employer on 4 January 1995.
8. Plaintiff returned to work for defendant-employer on 4 January 1995 and was assigned to defendant-employer's warehouse in a job that did not exist on the open market. Defendant-employer assigned plaintiff to cleaning tools and equipment and placing boxes in bins. Plaintiff was not returned to his former position as an asbestos remover. As described by the president of the company, the plaintiff's new job was "Basically we were going to do whatever he felt like he could do. We started out basically cleaning equipment and the majority of the time he was sitting." According to the president the plaintiff spent most of his time cleaning drop cords, vacuum cleaners, and various small equipment. There were no production requirements on the plaintiff and the plaintiff was only going to be required to do whatever he felt that he was capable of doing.
9. After returning to work in a made-up job, plaintiff experienced back pain about which he complained to defendant-employer and Dr. Rich. Defendant-employer instructed plaintiff to perform only those tasks which he felt that he was capable of performing. Dr. Rich prescribed pain medication, but did not assign any additional work restrictions.
10. Plaintiff continued reporting to his made-up job through 30 June 1995. From 2 January 1995 through 30 June 1995, plaintiff worked an approximate average of twenty-eight hours per week. During this period, plaintiff was absent from or late to work on numerous occasions. Defendant-employer instructed plaintiff that he was required to provide notices and excuses for his absences from work. On multiple occasions, plaintiff failed to comply with these instructions. On 30 June 1995, plaintiff's employment with defendant-employer was terminated.
11. Defendant did not show that other employees were terminated or would have been terminated for the reasons given for plaintiff's termination. The Full Commission finds as a fact that other employees would not have been terminated for the reasons defendant-employer gave for plaintiff's termination.
12. Plaintiff has earned no wages from defendant employer or any other employer since 30 June 1995. Despite a search for employment, the plaintiff has experienced difficulty in obtaining employment because of his two prior back surgeries. The plaintiff has always performed heavy manual work and has no experience in any type of office work or sedentary activities.
13. On 6 March 1995, plaintiff attained maximum medical improvement. On that date, plaintiff had a twenty-five percent permanent impairment of his back as a result of his injury on 2 June 1993 and his two subsequent surgeries.
14. Plaintiff and defendants entered into a Form 21 agreement which was approved by the Industrial Commission on 19 August 1993.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Defendants not having shown that others would have been terminated for the same reasons given for plaintiff's termination, plaintiff has not constructively abandoned his employment by reason of such alleged misconduct. Seagravesv. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 587 (1996).
2. Having been disabled by an on the job injury and not having returned to work in a job available on the open market, plaintiff is entitled to a presumption of continuing disability.Kisiah v. W.R. Kisiah Plumbing, Incorporated, 124 N.C. App. 72, 476 S.E.2d 434 (1996).
3. When any of the parties to a Form 21 Agreement "disagree as to the continuance of any weekly payment under such agreement, either party may make application to the . . . Commission for a hearing." N.C.G.S. § 97-83 (1991); see Workers' Compensation Rules of the Industrial Commission Rule 404. If the disagreement relates to the continued disability of the employee, the Commission must resolve that issue based on the evidence presented and determine if the employee is capable of earning the same wages he had earned before his injury in the same or other employment. See Hilliard v. Apex Cabinet Co., 305 N.C. 593,595, 290 S.E.2d 682, 683 (1982); N.C.G.S. § 97-2(9) (1991) (defining disability). It is an employee's "post-injury earning capacity" rather than an employee's actual wages which are relevant in assessing the disability. Saums v.Raleigh Community Hosp., 124 N.C. App. 219,476 S.E.2d 372, 374 (1996). Here, defendants have made no showing that plaintiff's disability is at an end. N.C. Gen. Stat. § 97-32; N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to payment of disability compensation at the rate of $240.01 per week from 30 June 1995 until he returns to work at wages equal to those he formerly earned or until further orders of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his injury on 2 June 1993 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen his period of disability. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the Deputy Commissioner's holding and enters the following:
AWARD
1. Defendants shall pay plaintiff permanent disability compensation at the rate of $240.01 per week from 30 June 1995 until plaintiff returns to work at wages equal to those he formerly earned or until further order of the Industrial Commission. The amount which has accrued to the date of this Opinion and Award shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 3 of this Award. Thereafter weekly payments shall be made to plaintiff with every fourth check going to plaintiff's attorney.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury on 2 June 1993 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen his period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the sum due plaintiff in paragraph 1 of this Award shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive directly from defendants every fourth check.
4. Defendants shall pay the costs.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________ DIANNE C. SELLERS COMMISSIONER
S/ ____________ COY M. VANCE COMMISSIONER