The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and arguments on appeal. Based upon their assignments of error, defendants have not shown good grounds to amend the holding of the prior Opinion and Award. However, pursuant to its authority under G.S. §97-85, the Full Commission has modified in part and affirmed in part the Deputy Commissioner's holding and enters the following Opinion and Award.
***********
 EVIDENTIARY RULING
A key issue in this case was whether plaintiff's termination by defendant-employer on 11 November 1996 was related or unrelated to his injury by accident. As such, inquiry was required into whether plaintiff was terminated for "misconduct or fault, unrelated to [his] compensable injury" and "for which a nondisabled employee would ordinarily have been terminated." Seagraves v. Austin Co., of Greensboro, 123 N.C. App. 228,472 S.E.2d 587 (1996). At the hearing before Deputy Commissioner Hoag, defendants attempted to elicit testimony from Mr. Arthur A. McPherson on this subject. During direct examination by counsel for defendants, counsel for plaintiff objected (T p. 11, line 13) and Deputy Commissioner Hoag sustained the objection. (T p. 12, line 8). As the questioning by counsel for defendants proceeded, counsel for plaintiff again objected. (T p. 12, line 15). Deputy Commissioner Hoag then ruled that she would permit additional questions only if they related to plaintiff's credibility (T p. 12, lines 24-25).
Pursuant to the Rules of Evidence and the law as established inSeagraves, the line of questioning pursued by counsel for defendants was relevant and counsel for plaintiff's objections should have been overruled. The Deputy Commissioner's rulings to the contrary hampered defendants efforts in pursuing this line of questioning. Therefore, these evidentiary rulings by Deputy Commissioner Hoag were in error and are hereby REVERSED.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 15 September 1997 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Federated Mutual Insurance Company is the carrier on the risk.
4. The date of plaintiff's compensable injury by accident was 3 May 1996. Defendants paid benefits pursuant to a Form 60.
5. Medical documents were submitted in a tabbed and indexed format.
6. The issue to be resolved in this case is whether plaintiff should continue to be paid temporary partial disability or temporary total disability.
7. Plaintiff has been receiving temporary partial disability compensation at the rate of $126.46 per week based upon his ability to earn an average weekly wage of $232.53.
***********
Based upon all of the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 15 September 1997, plaintiff was a thirty-one year old male who resides in Kitty Hawk, North Carolina. He is married and resides with his wife and two minor children ages eight and ten.
2. Among plaintiff's duties while working for defendant-employer, was putting cars onto a lift. Approximately forty percent (40%) of his job duties involved manual labor.
3. While working for defendant-employer on 3 May 1996, plaintiff was asked to move a motorcycle from behind a truck. While plaintiff was moving the motorcycle, the truck inexplicably backed up and hit the motorcycle. Plaintiff fell to the ground, twisting to the left and the motorcycle fell on top of him. As a result of this incident, plaintiff sustained pain in his left hand and left arm, cracked a bone in his hand and strained his back. There were no witnesses to the incident.
4. Plaintiff presented to the local medical center (Beach Medical) for an assessment of his injuries. His left wrist was placed in a splint due to a non-displaced fracture.
5. Plaintiff worked a week to ten days subsequent to his injury. At some point during that time, his back began to bother him and he experienced pain radiating into his left leg.
6. Plaintiff was examined by Dr. J. Patrick Kessler on 7 May 1996, who diagnosed plaintiff as having sustained a lower lumbar sprain, muscular in nature. Dr. Kessler prescribed Skelaxin, Soma and Naprosyn for plaintiff. Plaintiff also had physical therapy, continued anti-inflammatory medication and rehabilitation.
7. An Industrial Commission Form 60 "Employers Admission Of Employee's Right To Compensation," was received by the Commission on 26 August 1996. By filing this Form 60, defendants admitted the compensability of plaintiff's injury by accident and paid temporary total disability compensation pursuant thereto.
8. On 15 July 1996, Dr. Kessler released plaintiff to return to work at four (4) hours per day with restrictions of not lifting more than fifteen (15) pounds and with limited bending. Dr. Kessler increased plaintiff's hours to six (6) hours per day on 31 July 1996. On 14 August 1996, Dr. Kessler increased plaintiff's work to eight (8) hours per day. However, plaintiff was unable to sustain this level of work, so Dr. Kessler again reduced his hours. On 9 September 1996, Dr. Kessler again removed plaintiff from work.
9. Subsequent to 9 September 1996, defendants refused to authorize additional treatment by Dr. Kessler because plaintiff's wife worked for this physician. Plaintiff was then sent to Dr. Williamson for a one-time examination. Dr. Williamson found nothing wrong with plaintiff.
10. On or about 15 September 1996, plaintiff again returned to work at reduced hours. From that date until his termination on 11 November 1996, plaintiff's average weekly wage was $232.53. Based upon this reduced wage earning capacity, defendants began making payments of temporary partial disability compensation at the rate of $126.46 per week, commencing on 15 September 1996 and continuing through the present.
11. Plaintiff was then referred to Dr. Michael M. Romash on 16 September 1996 for a hip scan and EMG. Dr. Romash reviewed x-rays and a MRI which demonstrated no abnormalities. Dr. Romash recommended plaintiff return to work with restrictions and noted that he did not understand plaintiff's subjective complaints. He then referred plaintiff to Dr. J. Abbott Byrd, III.
12. Even prior to the filing of their Form 60, defendants initiated surveillance of plaintiff as early as 15 July 1996. Mr. Kenneth D. Whapham, a private investigator hired by defendants, testified at the hearing on 15 September 1997, that this initial surveillance was "preliminary" in nature and was designed to locate plaintiff's residence "and such things." Inexplicably, "such things" included investigating plaintiff's driving history and local court dockets to determine that there was a pending court date for plaintiff's traffic violations. It would appear that defendants were using surveillance at this early date to gather information regarding any "bad acts" plaintiff may have committed. This type of surveillance is not condoned by the Commission and would not produce relevant or admissible evidence.
13. Through their private investigator, defendants continued their surveillance of plaintiff through 27 September 1996.
14. On 30 May 1996, Ms. Donna Henderson of Vocational Medical Consultants, Inc., was assigned to plaintiff's case by defendants. Ms. Henderson is licensed as a medical and vocational rehabilitation counselor in Virginia.
15. On 14 October 1996 Ms. Henderson accompanied plaintiff to his initial appointment with Dr. Byrd. On that date, Ms. Henderson provided a copy of the video taped surveillance of plaintiff along with a written report to Dr. Byrd. She did not provide a copy of the tape or the report to plaintiff on that date.
16. Following the examination on 14 October 1996, Dr. Byrd diagnosed plaintiff as having four mobile lumbar vertebrae with sacralization at the L5 level. Additionally, based on the tape and report provided by Ms. Henderson, Dr. Byrd opined that there were discrepancies between plaintiff's subjective estimate of his physical abilities and the activities he is seen to perform on the surveillance video. On 6 November 1996, Dr. Byrd found that plaintiff was able to work with a lifting restriction of fifty (50) pounds and on 27 January 1997, plaintiff was returned to work at his pre-injury status. However, given the circumstances under which Dr. Byrd received the surveillance tape and written report, his opinions regarding plaintiff's condition and credibility are not given any weight.
17. Plaintiff next saw Dr. Lawrence J. Morales, an orthopaedic surgeon in Chesapeake, Virginia. Dr. Morales first examined plaintiff on 18 February 1997. Plaintiff presented with persistent low back which he claimed radiated into his buttocks and caused weakness in his legs.
18. Dr. Morales diagnosed plaintiff as having traumatic myofascial pain syndrome with clinically demonstrable trigger points. Dr. Morales referred plaintiff to a chronic pain syndrome clinic for further treatment. According to Dr. Morales, he had nothing more to offer plaintiff from an orthopaedic point of view and surgery was not an option at that time. Dr. Morales did inject plaintiff with methoprednizone and Marcaine for some relief. According to Dr. Morales, plaintiff could be reintroduced into a productive work environment after taking a three to six week chronic pain program.
19. On his own, plaintiff then consulted with Dr. Raymond Iglecia in Chesapeake, Virginia. Dr. Iglecia is board certified in pain management, addiction management, psychiatry and board eligible in neurology. Plaintiff was first examined by Dr. Iglecia in February 1997 and underwent a complete neurological, psychiatric and pain evaluation. Following this examination, Dr. Iglecia diagnosed plaintiff as having a chronic pain syndrome and removed him from work for thirty days.
20. A psychologist, Dr. Norbert Newfield, who has been working with Dr. Iglecia for twenty years, also evaluated plaintiff. Plaintiff was first examined by Dr. Newfield on 7 March 1997. Dr. Newfield was not optimistic about how plaintiff would perform in any chronic pain program. Plaintiff has problems due to psychosocial issues, which appear in his evaluation that would give him problems fitting into the clinic's program.
21. The medical and psychological treatment provided by Dr. Iglecia and Dr. Newfield was reasonably necessary to effect a cure and provide relief to plaintiff as the result of his injury by accident on 3 May 1996.
22. An Industrial Commission Form 24 Application to Terminate or Suspend payment of compensation was filed by defendants in October 1996. This Form 24 was properly denied by then Special Deputy Commissioner Amy L. Pfeiffer on 29 October 1996. Defendants then filed a second Form 24 on 26 November 1996 attempting to terminate or suspend payments of temporary partial disability compensation. Because the Form 24 process does not apply to this type of benefits, defendants' Form 24 was properly denied on 15 January 1997.
23. On 11 November 1996, plaintiff was terminated by defendant-employer. On that date, plaintiff was working reduced hours in a light duty job.
24. As noted in the evidentiary ruling, during the direct examination of Mr. Arthur A. McPherson by defendants, the Deputy Commissioner made erroneous rulings on plaintiff's objections. However, despite these rulings, defendants failed ask questions about or to pursue in any manner the second prong of theSeagraves test, whether plaintiff's termination was for misconduct "for which a nondisabled employee would ordinarily have been terminated." Furthermore, defendants failed to make an Offer of Proof, which was their right, on this issue.
25. Although defendants allege that plaintiff was terminated for misconduct unrelated to his injury by accident, there is insufficient evidence in the record upon which to make such a finding. Furthermore, there is no evidence in the record as to defendant-employer's policies and practice in the termination of other, non-disabled, employees.
26. At the time of his termination on 11 November 1996, plaintiff was receiving temporary partial disability compensation at the rate of $126.46 per week based upon an average weekly wage of $232.53. This compensation commenced on 15 July 1996 and has continued through present.
27. As the result of his 3 May 1996 injury by accident and his termination by defendant-employer, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment for the period of 11 November 1996 through the present and continuing.
28. In their Pre-Trial Agreement, the parties stipulated that plaintiff's average weekly wage on 3 May 1996 was undetermined. No additional information has been submitted.
29. No physician has assigned a permanent partial disability rating to plaintiff's back as the result of his 3 May 1996 injury by accident.
***********
Based upon the foregoing findings of fact, the Full Commission finds as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 3 May 1996. G.S. § 97-2(6).
2. By filing the Form 60 on 26 August 1996, defendants admitted plaintiff's right to compensation for the injury by accident on 3 May 1996. G.S. § 97-18(b). The Form 60 and defendants subsequent payment of workers' compensation benefits pursuant thereto constitutes an Award of the Commission with respect to compensability and liability for the injury by accident.Calhoun v. Wayne Dennis Heating Air Cond.,129 N.C. App. 794, 501 S.E.2d 346 (1998). Therefore, plaintiff is entitled to a rebuttable presumption of continued total disability.Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72,476 S.E.2d 434 (1996), disc. rev. denied, 345 N.C. 343,483 S.E.2d 169 (1997). Defendants have failed to produce sufficient evidence to rebut this presumption. Id.
3. There is insufficient evidence of record to determine whether plaintiff's termination was for "misconduct or fault, unrelated to [his] compensable injury" and "for which a nondisabled employee would ordinarily have been terminated."Seagraves v. Austin Co., of Greensboro, 123 N.C. App. 228,472 S.E.2d 587 (1996). Therefore, coupled with the presumption of continued total disability, plaintiff is entitled benefits for the further diminution in his wage earnings capacity due to his work related injury. Id.; Kisiah v. W.R.Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996),disc. rev. denied, 345 N.C. 343, 483 S.E.2d 169 (1997).
4. As a result of his injury by accident on 3 May 1996 and the presumption of continued total disability, plaintiff is entitled to paid by defendant temporary total disability compensation at a rate to be determined for the period of 11 November 1996 through the present and continuing until further order of the Commission. G.S. § 97-29.
5. Defendants are entitled to a credit against the temporary total disability compensation to which plaintiff is entitled for the amount of temporary partial disability compensation which has been paid to plaintiff from 11 November 1996 through the present. G.S. § 97-42.
6. As the result of his 3 May 1996 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses which have been incurred, including expenses related to the treatment provided by Dr. Iglecia and Dr. Newfield. G.S. § 97-25. However, the Full Commission does not approve of any additional or ongoing treatment by Dr. Iglecia and another physician must be selected as plaintiff's primary treating physician. Id. Additionally, based upon the recommendations of all of his physicians, plaintiff shall undergo, and shall cooperate with additional physical therapy and pain management programs to be paid for by defendants.Id. Following physical therapy and/or pain management plaintiff shall undertake vocational counseling to be provided by defendants
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at a rate to be determined for the period of 11 November 1996 through the present and continuing until further order of the Commission. From the amounts having accrued, these benefits shall be paid to plaintiff in a lump sum. These benefits are subject to the attorney's fee and credit approved herein.
2. Defendants shall receive a credit against the compensation awarded to plaintiff in paragraph (1) for the amount of temporary partial disability compensation which has been paid to plaintiff from 11 November 1996 through the present.
3. Defendants shall pay for all related medical expenses incurred by plaintiff as the result of his injury by accident on 3 May 1996, including expenses related to the treatment previously provided by Dr. Iglecia and Dr. Newfield and expenses related to physical therapy and pain management programs. Following physical therapy and/or pain management plaintiff shall undertake vocational counseling to be provided by defendants.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff is hereby approved for counsel for plaintiff. From the amount of compensation which has accrued, this fee shall be deducted from the amount owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall bear the costs.
***********
 ORDER
The parties are hereby ORDERED to agree to plaintiff's average weekly wage by stipulation or otherwise or to submit additional information to the Full Commission within fifteen (15) days of receipt of this Opinion and Award.
Additionally, this matter is hereby forwarded to Margaret Dunn, the Industrial Commission's Workers' Compensation Nurses' Supervisor, for further review of the actions of Ms. Donna Henderson, Vocational Medical Consultants, Inc. and defendants in reference to the Commission's Industrial Rehabilitation Rules. Following her review, Ms. Dunn will forward to the Full Commission a written report of her findings.
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER