Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission finds good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
A 2 June 1997 letter from defendants' counsel to plaintiff's counsel, in which letter plaintiff is offered his former job as a credit collector, is received into evidence with consent of the parties.
***********
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by provisions of the North Carolina Workers' Compensation Act.
2. An employer and employee relationship existed between plaintiff and defendant-employer on 23 September 1995.
3. Defendant-employer was insured by Anthem Casualty Insurance Group (now Shelby Insurance) at the time of plaintiff's injury.
4. The date of plaintiff's injury by accident is 23 September 1995.
5. Plaintiff and defendants entered into an Industrial Commission Form 21 Agreement for the payment of compensation and the Commission approved that agreement on 22 February 1996. Thereafter, the parties entered into an Industrial Commission Form 26 Agreement for the payment of temporary partial disability, which the Commission approved on 24 April 1996.
6. The parties stipulated to the following documents which they agreed were authentic and genuine reproductions of business or medical records maintained in the regular course of business and said documents were received into evidence without further identification or verification:
A. Plaintiff's medical records from Dr. Edwin Bartlett.
B. Surveillance reports from Mr. Charlie Earp.
C. Surveillance videotape recorded by Mr. Charlie Earp.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 2 December 1997, the date of the hearing before the Deputy Commissioner, plaintiff was 25 years old with an eleventh grade education.
2. Plaintiff was employed by defendant-employer as a furniture delivery man.
3. On 23 September 1995, while in the course of performing his duties for defendant-employer, plaintiff was involved in a motor vehicle accident. As the result of this incident, plaintiff sustained injuries to his left knee, right leg and right ankle.
4. Defendants admitted the compensability of the injuries plaintiff sustained on 23 September 1995 by entering into an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 26 February 1996. Pursuant to this Form 21 Agreement, plaintiff was paid temporary total disability compensation at the rate of $160.01 per week from 1 October 1995 to 2 January 1996.
5. Following his 23 September 1995 injury, plaintiff underwent treatment by Dr. Edwin C. Bartlett, which included physical therapy. As of 27 October 1995, tests had revealed nerve deficits in plaintiff's lower extremity which were causing pain and weakness and which resulted in a decreased chance of returning to normal activities. Plaintiff was unable to return to the driver position.
6. By 21 December 1995, plaintiff's knee injury had resolved, but he was still experiencing problems with his quadriceps. Nonetheless, plaintiff's condition had progressed to the point that Dr. Bartlett released him to light duty work. This light duty work was to begin in January 1996 and was initially to be limited to four hours per day.
7. On 2 January 1996, plaintiff returned to work for defendant-employer in a light duty job as a credit collector. Plaintiff's job as a credit collector involved using the telephone to call delinquent accounts, tracking past due accounts, and maintaining a list of individuals and the amounts each owed. The position of credit collector was a sedentary position, which was in accordance with the recommendations of Dr. Bartlett and was not modified.
8. On 9 January 1996, the parties entered into an Industrial Commission Form 26 Supplemental Agreement for Compensation, which was approved by the Commission on 24 April 1996. Pursuant to this Form 26 Agreement, plaintiff was paid temporary partial disability compensation at various weekly rates from 2 January 1996 through 18 July 1996.
9. Following his return to work on 2 January 1996, plaintiff gradually increased his hours of work. By 17 July 1996, plaintiff was working thirty-two hours per week. Defendant-employer accommodated plaintiff's schedule by allowing him to attend medical appointments and physical therapy appointments during this period. At some point, however, defendant-employer began requiring plaintiff to make up time missed for these appointments.
10. Prior to his injury, plaintiff coached a little league baseball team. Following his injury, and despite his physical limitations, plaintiff wished to continue his involvement with his son's little league team. In May 1996, plaintiff sought permission from Mr. Len Gravel, his supervisor, to leave early on some days to assist with coaching the team. Upon his request, Mr. Gravel approved plaintiff's participation in this activity, on condition that plaintiff make up any missed time.
11. From sometime in May 1996 to 18 July 1996, plaintiff coached his baseball team while continuing to work for defendant-employer. During this period, plaintiff altered his work schedule with the permission of his supervisor by reporting to work early on the days he was scheduled to practice with the team. If plaintiff was scheduled to work until 7:00 p.m., he would report to work two hours early so that he could leave at 5:00 p.m. for practice. This altering of plaintiff's work schedule occurred on approximately fifteen occasions during this period, each time with the approval of Mr. Gravel.
12. On 17 July 1996, plaintiff's baseball team was scheduled to play in a tournament at 6:00 p.m. and to have team photographs taken before the games, at 5:00 p.m. At approximately 11:00 a.m. on that day, plaintiff told Mr. Gravel that he would need to leave work early for the pictures and the tournament. Initially, Mr. Gravel declined plaintiff's request. However, when plaintiff explained that he had reported to work early at 10:30 a.m. in order to leave early, Mr. Gravel appeared to relent and did not make it clear that plaintiff was not authorized to leave before 5:00.
13. On or about 23 April 1996, defendant had adopted a set schedule policy. Plaintiff signed a schedule and acknowledged his requirement to adhere to it. Despite this written policy, Mr. Gravel allowed plaintiff to alter his work schedule during the period of May 1996 to 17 July 1996.
14. At the hearing before the Deputy Commissioner on 2 December 1997, Mr. Gravel denied that he had ever authorized plaintiff to ever leave early. Instead, Mr. Gravel indicated that plaintiff was required to adhere to the set schedule adopted on 23 April 1996. Mr. Gravel also disputed plaintiff's version of events on 17 July 1996 and contended that he did not authorize plaintiff to leave work early or alter his work schedule on that date.
15. On the issue of whether plaintiff was granted permission to alter his work schedule on a fairly regular basis, plaintiff's testimony is found to be credible. Plaintiff's testimony regarding the events which took place on 17 July 1996 is accepted as credible. Plaintiff reasonably believed that he was not violating company policy when he altered his work schedule on 17 July 1996.
16. On 18 July 1996, plaintiff was terminated by defendant-employer allegedly for violating company policy by altering his schedule without prior approval and leaving work early.
17. In August of 1996, Dr. Bartlett ordered a functional capacity evaluation for plaintiff. The results of this examination found that plaintiff was able to work in sedentary positions with limitations of no lifting and no walking or standing for extended periods of time. The functional capacity evaluation placed no restrictions on the duration of time plaintiff could sit. The credit collector position fit within these restrictions.
18. Following his termination, plaintiff certified that he was ready, willing, and able to work. Plaintiff sought and eventually obtained, unemployment benefits from the Employment Security Commission. Plaintiff is currently unemployed.
19. By letter of 2 June 1997, defendant-employer through counsel, offered to rehire plaintiff as a credit collector, the same position he held before his termination. This offer was contingent on plaintiff agreeing to seek prior approval before altering his schedule. Plaintiff declined this offer of employment even though he was physically capable of returning to work in the proffered position. Plaintiff offered no reason other than a desire not to work for defendant-employer
20. On 23 September 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
21. Defendants failed to produce credible evidence that plaintiff's termination was unrelated to his 23 September 1995 injury by accident and was due to misconduct or fault for which a non-disabled employee would ordinarily have been terminated. The credible evidence of record shows that plaintiff had sought and received permission from his supervisor to alter his work schedule on each occasion and on 17 July 1996.
22. The job as a credit collector offered by defendant-employer on 2 July 1997 was a suitable position for plaintiff's physical limitations. However, given the circumstances under which he was terminated, plaintiff justifiably refused to return to work for defendant-employer.
23. Plaintiff reached maximum medical improvement in August of 1996 and retains a thirty percent (30%) permanent partial disability rating to his left knee.
24. Plaintiff has been unable to earn wages with defendant-employer or any other employment from 18 July 1996 through the date of the hearing before the deputy commissioner, and continuing.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 23 September 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. 97-2(6).
2. Defendants have failed to prove that plaintiff's termination on 18 July 1996 was unrelated to his 23 September 1996 injury by accident and due to misconduct or fault for which a non-disabled employee would ordinarily have been terminated. Seagraves v.The Austin Co. Greensboro, 123 N.C. App. 228, 472 S.E.2d 587
(1996).
3. The job offered by defendants to plaintiff on 7 July 1997 was suitable for plaintiff's physical restrictions. However, plaintiff's refusal to return to work was unjustified. G.S.97-32.
4. As the result of his injury by accident, plaintiff is entitled to receive ongoing disability compensation at the rate of $160.01 per week for the period of 18 July 1996 through the date of the hearing before the deputy commissioner and continuing until such time as he returns to work, or until further order of the Commission. G.S. 97-29
5. Defendants are responsible for medical expenses reasonably required because of plaintiff's injury by accident. G.S. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $160.01 per week from 18 July 1996 and continuing until such time as plaintiff returns to work or until further order of the Commission. The accrued amount shall be paid in a lump sum. This compensation is subject to the attorney's fee approved below.
2. Defendants shall pay for all medical expenses reasonably required because of plaintiff's 23 September 1995 injury by accident.
3. Counsel for plaintiff is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the amount awarded to plaintiff. One fourth of the accrued amount of plaintiff's award shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid to plaintiff's counsel.
4. Defendants shall pay the costs.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ LAURA K. MAVRETIC COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER