The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case.
2. The parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
3. Employers Insurance of Wausau was the carrier on the risk.
4. The employee-employer relationship existed between the parties at all relevant times.
5. Plaintiffs average weekly wage was $237.22, which yields a maximum compensation rate of $158.15 per week, based upon the Form 22.
6. Plaintiff sustained a compensable lumbar strain on January 11, 1995, which was treated as a medical only claim. Defendants paid $3,251.00 in medical expenses incurred as a result of this injury, the last of which was paid on September 27, 1995. The carrier prepared a Form 28B report closing the file on November 3, 1995. On November 7, 1995, the Commission received the Form 28B.
7. The issues for determination are:
 a. Whether plaintiff sustained a change of condition of his compensable back strain, and if so, to what benefits may he be entitled under the Act?
 b. Whether plaintiff has been disabled from earning wages in employment since June of 1996, and whether this incapacity to earn wages is causally related to the compensable back strain?
8. The parties stipulated medical reports into the record:
a. Stipulated Exhibit 1 contents of the Commission file,
b. Stipulated Exhibit 2 twenty-two pages of medical records.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with modifications as follows:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, plaintiff was a forty-four year old married male, who was employed as a helper on the Holtec machine at defendant-employers lumber business. Plaintiffs duties included operating wood-working machines, to cut and shape lumber. He was also responsible for locating and carrying lumber to be cut on the yard.
2. On January 11, 1995, plaintiff was stacking lumber, which was two feet by six feet by sixteen feet in length. As the stack of wood began to fall toward his coworkers hand, plaintiff twisted at his low back to stop the wood from slipping. Plaintiff felt pain in his back which he reported to his employer.
3. Plaintiff sought medical attention for this injury on January 12, 1995 at Romedical Center where he was initially treated by Dr. Lykins. Plaintiff reported the twisting injury, but denied any radiation of pain to the leg. After an examination, Dr. Lykins diagnosed plaintiff with a strain of the left para-lumbar area over the quadratus lumborum muscle. Plaintiff was given Anaprox and Soma for pain and was restricted to light duty for one week, with no lifting, bending, pushing or pulling.
4. Defendant-employer provided work for plaintiff within his restrictions by having him tag lumber.
5. After the January 19, 1995 visit to Romedical, a CT scan was ordered. The January 23, 1995 CT scan revealed a degenerative canal stenosis as well as congenital canal stenosis most severe at L4-5 and slightly less severe at L5-S1, with no herniation or fracture. Plaintiff was referred to orthopedist Dr. Leon Dickerson.
6. On March 3, 1995, Dr. Dickerson at Charlotte Orthopedic Specialists first saw plaintiff. Following an examination, Dr. Dickerson diagnosed lumbar strain, ordered physical therapy and continued plaintiff on light duty work. Dr. Dickerson found plaintiffs condition did not require surgery.
7. On March 7, 1995, plaintiff began daily physical therapy with Robert King, P.T. The sessions included heat and massage therapy and were to continue through March 27, 1997.
8. On March 27, 1995, plaintiff advised Dr. Dickerson that his symptoms had not improved with therapy. Dr. Dickerson found plaintiffs Waddells signs positive for symptom magnification. Therapy and a Pentathol pain study were ordered. Plaintiff declined to have the pain study performed.
9. On April 28, 1995, plaintiff returned to Dr. Dickerson. After a physical examination, Dr. Dickerson noted that the examination had not been helpful due to the degree of symptom magnification that plaintiff had exhibited at all three visits. Dr. Dickerson further noted, "It is my opinion that the patient does not have any specific spine disease to cause the symptoms that he (plaintiff) demonstrates. He may be dismissed with 0% disability. Dr. Dickerson released plaintiff to return to light duty work for four to six weeks and to return to his regular duty thereafter, with no further treatment.
10. On November 30, 1995, plaintiff filed his Form 18 with the Industrial Commission.
11. Without seeking authorization from either defendants or the Industrial Commission, plaintiff sought medical treatment from Cabarrus Orthopedic Clinic on January 22, 1996. Upon examination, the physician noted that plaintiff grunted with any movement, exhibited exaggerated pain complaints, and even complained of back pain when the doctor placed pressure on the top of plaintiffs head. The neurological examination was reported as normal, and no further treatment was ordered.
12. Again without seeking authorization from defendants, plaintiff sought treatment on May 20, 1996 from Dr. Todd Chapman. However, by letter dated July 15, 1996, plaintiff sought approval from the Industrial Commission for treatment by Dr. Chapman. After correspondence between defendants and the Commission, Chief Claims Examiner Pat Benton on February 6, 1997, authorized plaintiff to change his treating physician to Dr. Chapman.
13. A discogram administered to plaintiff by Dr. Chapman on May 28, 1996, showed a mild disc bulge at L4-5, even though a CT scan looked clean. A lumbar spine stabilization program was recommended.
14. Upon request of plaintiffs wife, Dr. Chapman provided a work note restricting plaintiff to working eight hours per day. Plaintiffs wife Floranda took the note to defendant-employer on May 21, 1996. However, the note had been altered to add the words, "No Weekends. Either plaintiff or his wife altered the medical excuse from Dr. Chapman.
15. Defendant-employer questioned plaintiff regarding the altered doctors excuse. Plaintiff was suspended on June 10, 1996 and was instructed to provide an explanation of the alteration within five days.
16. On June 17, 1996, plaintiff refused to provide an explanation or to sign a release for records from Dr. Chapman. At that time, plaintiff was terminated from his employment with defendant-employer.
17. After plaintiffs termination from employment, he applied for and received unemployment benefits.
18. Following treatment by Dr. Chapman in June 1996, plaintiff did not receive any medical treatment until March of 1998. By letter dated February 24, 1997, however, plaintiff requested authorization from the Industrial Commission to change physicians from Dr. Chapman, who had experienced heart problems, to Dr. Vincent Paul. By order dated April 28, 1997, the Executive Secretary held the decision in abeyance pending receipt of additional medical records. When no ruling was entered on the change of physician request, plaintiff filed a Form 33 Request for Hearing on or about July 21, 1997. Plaintiff sought Commission approval of change of physician to Dr. Paul within a reasonable time.
19. On March 30, 1998, plaintiff was evaluated by Dr. Paul. Dr. Paul found plaintiff exhibited positive Waddells signs, but also recognized that plaintiff had symptoms consistent with a positive discogram at L4-5 in 1996. Dr. Paul found that if plaintiff had no further treatment done, he retained a ten percent permanent functional impairment to his back and recommended permanent restrictions of twenty pounds lifting and no repetitive bending or stooping.
20. Dr. Paul gave an opinion that plaintiffs disc bulge was either caused, aggravated or accelerated by the injury by accident and that his degenerative disc disease was aggravated or accelerated by the compensable injury. Based upon the time that elapsed between plaintiffs compensable injury and the one time Dr. Paul saw plaintiff, the Commission gives no weight to Dr. Pauls opinions as to causation.
21. Any inability to earn wages which plaintiff has had since June 17, 1996 was due to plaintiffs discharge from employment for falsification of the doctors note and not due to his injury. Plaintiffs conduct amounted to misconduct which would have subjected a non disabled employee to termination. The tagger job, which was an actual light-duty job at defendant-employer and was suitable to his restrictions, continued to be available for plaintiff but for his misconduct.
22. Plaintiff has made no reasonable efforts to find work consistent with his restrictions since his termination for misconduct on June 17, 1996.
23. The 28B Report filed with the Commission by defendants on November 7, 1995, purportedly closed plaintiffs claim upon the last payment of medical compensation. However, plaintiff continued to receive medical treatment in 1996 and properly sought Commission approval for a change of treating physician to Dr. Chapman in July 1996. Despite correspondence between the Commission and defendants concerning plaintiffs request for change of physician to Dr. Chapman and the subsequent order of the Commission allowing such request, defendants continued to refuse to pay for plaintiffs medical care.
24. There is insufficient evidence of record from which to prove by the greater weight that plaintiffs current disability and incapacity, if any, to earn wages are causally related to his compensable injury by accident.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order to receive compensation under the Workers Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). Although plaintiff sustained an admittedly compensable injury for which defendants paid medical treatment expenses, plaintiff failed to prove any disability within the meaning of the Act. Plaintiff was terminated from his job for misconduct which constituted a constructive refusal of suitable employment.Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 587 (1996). Plaintiff failed to prove that any inability to earn wages after his termination was due to the compensable injury by accident. Id.
2. Plaintiffs disability, if any, since June 17, 1996, is not causally related to the compensable injury by accident. Therefore, plaintiff is not entitled to compensation. N.C. Gen. Stat.97-2(6); 97-29.
3. Pursuant to N.C. Gen. Stat. 97-47, the Commission may review an award and allow additional compensation; however, "no such review shall be made after twelve months from the date of the last payment of bills from medical or other treatment paid pursuant to this Article. Plaintiff sought and was granted Commission authorization for treatment by Dr. Chapman. Defendants refusal to pay for Dr. Chapmans authorized treatment cannot be used to toll the time limitations for applying for additional benefits. N.C. Gen. Stat. 97-47 does not apply to these facts, because the time limit does not begin to run until defendants have paid for the authorized medical treatment.
4. Plaintiff is entitled to payment by defendants of medical treatment for the compensable injury by accident which tends to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. 97-25. The approved payment of medical treatment includes that provided by Dr. Chapman and Dr. Paul. Plaintiffs right to medical compensation is subject to the termination provisions of N.C. Gen. Stat. 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim for compensation benefits is, and the same must be, DENIED.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury by accident, including treatment provided by Drs. Chapman and Paul.
3. Defendants shall pay the costs.
This the ___ day of May, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/______________ RENE S. RIGGSBEE COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/jth