The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission REVERSES the decision of the deputy commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The carrier on the risk at the time of the alleged injury by accident was Commerce Casualty Group, Inc.
2. Defendant-Employer regularly employs three or more employees and is bound by the North Carolina Workers Compensation Act. The employer-employee relationship existed between plaintiff and defendant-employer on or about 21/22 January 1998, the alleged day of the injury.
3. Plaintiffs average weekly wage is $460.00.
The Pre-Trial Agreement submitted by the parties at the hearing and dated 10 February 1999, is incorporated by reference. The medical records attached to the agreement were stipulated into evidence. The parties also stipulated into evidence the deposition of plaintiff, which was taken 17 September 1998.
***********
Based upon all of the competent evidence in the record, the Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. Plaintiff, who is thirty-nine years old, began working for defendant-employer in August or September 1997. His job at the automotive service and tire shop involved assisting customers, answering the telephone, changing tires and wheels, and performing minor service jobs such as doing inspections, changing oil, replacing headlights and flushing radiators. He was not a technician so he did not perform repairs to the vehicles.
2. On 21 or 22 January 1998, plaintiff injured his right shoulder at work. Plaintiff went to the back of the premises to find a used tire for a customer, and, after locating and lifting the tire he needed, a stack of tires tipped over against him, causing him to dislocate his right shoulder. Plaintiff felt an immediate onset of pain, but was able to "pop his shoulder back into place.
3. Plaintiff reported his injury to the owner of defendant business, Elliot Branson, later that afternoon. Mr. Branson told plaintiff to take the rest of the day off.
4. On 26 January 1998, Dr. Kirsch, a customer of defendant-employer, was on the premises and plaintiff told him of the injury. Dr. Kirsh scheduled an appointment for plaintiff with Dr. William J. Busby, an orthopedic surgeon.
5. Plaintiff presented to Dr. Busby on 28 January 1998. Dr. Busbys examination revealed that plaintiff had marked tenderness on the anterior aspect of the right shoulder, and lesser tenderness posteriorly around the shoulder. There was no swelling, but plaintiff had slightly decreased sensation in the distal deltoid area and on the ulnar side of his right hand and little finger. Dr. Busby diagnosed plaintiff with an acute dislocation of the right shoulder with neuropraxia to some of the nerves in the brachial plexus as a result of the dislocation.
6. Plaintiff was placed in a shoulder immobilizer and instructed not to elevate his shoulder or try to externally rotate his shoulder. He was given medication and written restrictions to limit work to light left handed tasks. Plaintiff returned to work on 28 January 1998, following the examination.
7. Plaintiff continued to receive treatment from Dr. Busby. On 13 February he presented to Dr. Busby with continued pain from using his right arm too frequently. Dr. Busby gave plaintiff a note that he should not do any work at all with his right arm for the next three weeks. Plaintiff was continued on medication.
8. Following plaintiffs examination on 13 February 1998, he returned to work and was involved in an altercation with another employee. Plaintiff was sent home, and on 14 February 1998 he was notified by telephone that as a result of the altercation, his employment was being terminated.
9. As a result of the altercation, plaintiff experienced increased pain in his right shoulder. On 14 February 1998, he presented to the emergency room of Thomasville Hospital and had x-rays taken of his shoulder. No further damage to the shoulder was indicated.
10. Plaintiff could have continued in the employ of defendant-employer performing tasks within his restrictions had he not been terminated as a result of the altercation on 13 February 1998.
11. Plaintiff returned to Dr. Busby on 17 February 1998. Following an examination which revealed continuing tenderness and persistent numbness in the ulnar nerve distribution in plaintiffs right hand, Dr. Busby referred plaintiff to neurologist, Dr. Keith Miller.
12. On 19 February 1998, plaintiff presented to Dr. Miller. Dr. Miller diagnosed plaintiff with a possible lower brachial plexus problem, and scheduled a EMG/NCS. The test results did not provide any evidence of a brachial plexopathy, and Dr. Miller presumed that plaintiff suffered from a localized muscle skeletal injury. He suggested physical therapy and referred plaintiff back to Dr. Busby.
13. Plaintiff continued to see Dr. Busby through April 1998. Plaintiff experienced clicking and popping when he tried to raise his right shoulder, which Dr. Busby could feel when palpitating the shoulder. An MRI showed an increased signal consistent with either tendinitis or a partial tear of the supraspinatous tendon. Plaintiff was given a steroid injection which was unsuccessful in controlling his pain. Dr. Busby referred plaintiff to Dr. Walt Curl at N.C. Baptist Hospital.
14. Plaintiff was examined by Dr. David Martin at N.C.B.H., who diagnosed plaintiff with a rotator cuff tear and a labral tear in his right shoulder. On 26 June 1998, Dr. Martin performed right shoulder arthroscopic surgery with capsular shrinking and labral reattachment.
15. On 6 August 1998, Dr. Martin recommended plaintiff undergo physical therapy and vocational rehabilitation. He recommended that plaintiff not return to any heavy labor condition and stated that plaintiff would no longer be able to do any type of significant overhead lifting. Plaintiff began physical therapy twice weekly, and was still participating in the program as of 17 September 1998.
16. The Full Commission finds plaintiffs testimony regarding his injury as credible, reversing the finding of the Deputy Commissioner. The record does not disclose a permanent partial disability rating for plaintiff; therefore, this issue is reserved for determination upon the receipt of appropriate evidence.
17. Plaintiff has a high school education, and has attended junior college and NBC School (neurobiological chemical) while in the military. He has held various construction jobs and was employed in sales and management for two Honda motorcycle dealerships. After 6 August 1998, plaintiff was capable of earning his pre-injury wages in employment which did not require heavy labor. Plaintiff did not make a reasonable effort to find suitable employment.
18. Plaintiffs employment with defendant-employer was terminated for reasons unrelated to his injury of 21 or 22 January 1998, and under circumstances which constitute misconduct on his part.
19. Plaintiffs average weekly wage of $460.00 yields a weekly compensation rate of $306.68.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 21 or 22 January 1998. N.C. Gen. Stat. 97-2(6).
2. Where an employee who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated from such employment for misconduct or other fault on the part of the employee, such termination constitutes a constructive refusal to accept employment so as to bar the employee from receiving benefits so long as the employees loss of, or diminution in, wages is attributable to the wrongful act resulting in loss of employment. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996). In this case, plaintiffs termination from employment with defendant-employer constitutes a constructive refusal to accept employment, and so bars his receipt of compensation until he underwent surgery on 26 July 1998. At that time, plaintiffs inability to earn wages became the result of his compensable injury, and so he became eligible to receive compensation benefits. Id.
3. The burden is on plaintiff to demonstrate that he is unable to earn the same wages he earned prior to his injury either in the same employment or in other employment. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). In this case, plaintiffs prior work history and education provide sufficient evidence to demonstrate that he is capable of returning to work in a capacity which is within the restrictions placed upon him by Dr. Martin. Accordingly, he is not eligible for compensation benefits after his release by Dr. Martin. Id; N.C. Gen. Stat. 97-29.
4. Plaintiff is entitled to temporary total disability in the amount of $306.68 for the period from 26 June 1998 until 6 August 1998, when he was released by Dr. Martin to return to work with restrictions and made no reasonable effort to find suitable employment. N.C. Gen. Stat. 97-29.
5. Plaintiff is entitled to payment by defendants for his medical treatment, including surgery, which is related to his compensable injury sustained on 21 or 22 January 1998. N.C. Gen. Stat. 97-25.
6. Upon introduction of evidence regarding a permanent disability rating, plaintiff may be eligible for compensation pursuant to N.C. Gen. Stat. 97-31.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff the weekly sum of $306.68 for the period from 26 June 1998 through 6 August 1998 in temporary total disability compensation. This amount has accrued, and shall be paid to plaintiff in a lump sum, subject to attorneys fees as discussed below.
2. Defendants shall pay for all medical treatment plaintiff received and may receive in the future as a result of his compensable injury.
3. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25% of the award contained in paragraph 1 above. Said fee shall be deducted from the lump sum award contained in paragraph 1 and paid directly to plaintiffs counsel.
4. Defendants shall pay the costs of this action.
This the ___ day of July, 2000.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER