***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Bost. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Integrated Health Care as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on 9 July 1997 as a result of which defendant admitted liability pursuant to a Form 60 Agreement. Plaintiff received benefits pursuant to the Form 60 through 11 September 1997.
5. Plaintiff's average weekly wage was $220.00, which yields a compensation rate of $146.67 per week.
6. On 12 September 1997, plaintiff returned to work with restrictions after a period of temporary total disability. Plaintiff continued receiving medical treatment and working with restrictions for defendant-employer until 7 October 1997, when she was fired.
7. Defendant authorized medical treatment rendered by Dr. Philip Holzknecht in Laurinburg, North Carolina and by Dr. James E. Rice in Southern Pines, North Carolina, but refused to authorize referrals to psychiatrists and/or pain clinics. Defendant has not authorized any treatment for plaintiff since plaintiff's last visit with Dr. Rice.
8. Plaintiff claims she is entitled to compensation for temporary total disability from 7 October 1997 to the present and continuing as plaintiff believes the evidence will show that she is unable to work and has not yet reached maximum medical improvement as she has not been able to obtain all the medical treatment she needs. Plaintiff further claims that she is entitled to medical compensation for the treatment she has received to date and the treatment she needs in the future. Plaintiff believes that she may have some permanent disability (partial or total) from her injury but that issue is premature at this time.
9. Defendant contends that plaintiff was terminated for reasons unrelated to her workers' compensation injury and that her current condition and any medical treatment after her last visit with Dr. Rice is unrelated to her 9 July 1997 injury.
10. Plaintiff has not worked for defendant-employer or any employer since 7 October 1997.
11. On 2 March 1983, plaintiff sustained an on the job injury to her left arm while employed by another employer in another state. Some physicians who have treated plaintiff for this injury have diagnosed plaintiff as having reflex sympathetic dystrophy in her left upper extremity. Plaintiff does not now receive indemnity benefits as a result of this injury, but there is a workers' compensation carrier who is obligated to pay lifetime medicals in connection with this injury.
12. The depositions of Dr. Kern Carlton, Dr. James Rice and Dr. Philip Holzknecht were received into evidence.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury on 9 July 1997, plaintiff was a 48-year-old, who had been employed as a cashier with defendant-employer. Plaintiff's duties included working in the various departments of the store, assisting customers by showing them merchandise or retrieving it for them from the stock room or locked displays, straightening up the merchandise and ringing up sales at check-out.
2. Plaintiff had been working for defendant-employer for approximately seven months prior to the time of her injury. Shortly before that, plaintiff worked for three weeks as a sales associate at J.C. Penny. Plaintiff had no other work experience since 1983.
3. On 9 July 1997, plaintiff sustained a compensable injury to her foot when a door from an entertainment center fell on her right foot. Plaintiff was treated at Scotland Urgent Care for a foot contusion and taken out of work.
4. Dr. Phillip Holzknecht treated plaintiff from 8 August 1997 through 10 October 1997 and diagnosed plaintiff with reflex sympathetic dystrophy.
5. Dr. Holzknecht allowed plaintiff to return to work in her cashier position with some modifications on 12 September 1997. Plaintiff worked in the cashier position until she was terminated on 7 October 1997.
6. On 27 September 1997, plaintiff was involved in a motor vehicle accident when she stepped on the accelerator and struck another car that was coming through an intersection. As a result, plaintiff saw Dr. Holzknecht on 29 September 1997 complaining of lower back pain.
7. On 1 October 1997, on a referral from Dr. Holzknecht, plaintiff presented to Cape Fear Valley Medical Center and Dr. Kenneth Oswalt. Dr. Oswalt examined plaintiff and found no evidence of a dysfunction, any pathology, disease or RSD.
8. On 6 October 1997, plaintiff was at defendant-employer's place of business but not working and went to the pharmacy to obtain a refill on one of the medications that she was taking for her injury. While waiting for the pharmacy to get approval from Dr. Holzknecht's office for the refill, plaintiff tried on a weight-lifting glove to see if it would help her condition and to give greater support to her hand and wrist in holding her crutches.
9. Plaintiff was in a great deal of pain, so she told the pharmacy technician that she was going to her doctor's office to speed the process of getting her refill. Dr. Holzknecht's office was nearby so plaintiff was able walk. Plaintiff left the premises wearing one glove. However, after leaving the doctor's office, plaintiff went directly back to defendant-employer's place of business to pay for the gloves, including the one that she was wearing.
10. While plaintiff was at Dr. Holzknecht's office, the pharmacy technician went to defendant-employer's office to see if workers' compensation or plaintiff should pay for the gloves. The pharmacy technician contacted the individual handling workers' compensation for defendant-employer's local store and not the individual handling loss prevention. Clearly the pharmacy technician did not perceive plaintiff was attempting to steal the glove.
11. When plaintiff returned to defendant-employer, she attempted to pay the pharmacy technician for the pair of gloves. The pharmacy technician told plaintiff that the matching glove of the pair was in the office. Plaintiff went to the office to get the matching glove. However, when plaintiff was not given the other glove, she retrieved another pair and paid for them at a register, which was not in the pharmacy area.
12. Plaintiff's actions were so erratic and disruptive at Dr. Holzknecht's office that he found it necessary to terminate his relationship with her on 6 October 1997. On 10 October 1997, he arranged for plaintiff's care to be transferred to Dr. James E. Rice. Plaintiff's behavior at Dr. Holzknecht's office confirms plaintiff's pain and state of mind that caused her to rush out to his office from the pharmacy area with one glove still on her hand.
13. The incident involving plaintiff rushing out to Dr. Holzknecht's office while still wearing the glove is related to plaintiff's compensable injury. Further, defendant-employer offered no evidence that a non-injured employee would have been terminated under similar circumstances.
14. On 7 October 1997, defendant-employer fired plaintiff for the alleged theft or misappropriation of company property that occurred on 6 October 1997.
15. On 20 October 1997, plaintiff was seen by Dr. Rice who doubted that plaintiff had RSD and recommended referral to a pain clinic.
16. Dr. Ellen Andrews began treating plaintiff again on 8 January 1998 and Dr. Lawrence Place saw plaintiff on 26 April 1999. Neither found objective indications that plaintiff suffered from RSD.
17. In April of 2000, plaintiff was evaluated at The Rehab Center in Charlotte by Dr. Kern Carlton. She was diagnosed with RSD in her right lower extremity.
18. Dr. Carlton stated that it was more likely than not that plaintiff's RSD in her right lower extremity, which was diagnosed by Dr. Holzknecht in August of 1997, had persisted from that point in time to his treatment of her.
19. The treatment which plaintiff has received for her right lower extremity since she was last seen by Dr. Rice was medically necessary to give relief and/or lessen her period of disability.
20. The evidence of record fails to show that plaintiff has reached maximum medical improvement and plaintiff is in need of additional medical treatment or evaluation. This includes but is not limited to a comprehensive multi-disciplinary behavior oriented pain management program, which plaintiff underwent and completed on 2 November 2001 after the close of the evidentiary record in this matter. Plaintiff is also in need of an evaluation regarding the issues of maximum medical improvement and work capability.
21. As a result of her 9 July 1997 injury by accident and her termination by the defendant-employer, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment from 7 October 1997 and continuing.
22. Defendant offered no evidence of any other jobs plaintiff could perform or obtain given her age, education, work experience, restrictions and level of pain.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on 9 July 1997. N.C.G.S. § 97-2(6).
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $146.67 per week for the period from 7 October 1997 and continuing until she returns to work or further order of the Commission. N.C.G.S. § 97-29.
3. Defendant failed to prove that plaintiff's termination was for misconduct or fault unrelated to the compensable injury and for which a non-disabled employee would ordinarily have been terminated. Thus, plaintiff's termination by defendant does not constitute a constructive refusal of suitable employment. N.C.G.S. § 97-32; Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996).
4. Subject to the limitations of N.C.G.S. § 97-25.1, plaintiff is entitled to have defendant pay for reasonably necessary medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. This includes, but is not limited to a comprehensive multi-disciplinary behavior pain management program. N.C.G.S. §§97-2(19); 97-25; 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $146.67 per week for the period from 7 October 1997 and continuing until plaintiff returns to work or until further order of the Commission. All accrued compensation shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Subject to the limitations of N.C.G.S. § 97-25.1, defendant shall pay reasonably necessary medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act. This includes, but is not limited to, a comprehensive multi-disciplinary behavior oriented pain management program.
4. As the plaintiff has not reached maximum medical improvement, this Opinion does not address plaintiff's entitlement to permanent partial disability. However, in the event that the parties are unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
5. Defendant shall pay the costs.
This the ___ day of May 2002.
 S/____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________________________ BUCK LATTIMORE CHAIRMAN
 S/_______________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER