RONALD L. JOHNSON, Plaintiff, v. JONES GROUP, INC., Defendant-Employer, and AETNA LIFE AND CASUALTY CO., Defendant-Carrier

No. COA94-1311

(Filed 16 July 1996)

**Workers' Compensation § 296 (NCI4th)— ability of claimant to make rational decisions—failure to accept treatment—findings required of Commission**

In cases where the ability of a claimant to make rational decisions regarding his or her welfare is at issue, the Industrial Commission must make findings regarding the claimant's ability to act as a "reasonable person" in weighing medical options and making treatment decisions before denying benefits under N.C.G.S. § 97-25; accordingly, when encountering a claimant defending failure to accept treatment by denial of the ability to make rational decisions in that regard, the Commission, in order to bar compensation under N.C.G.S. § 97-25, must record findings that the claimant possessed the ability to think and act as a reasonable person and, notwithstanding, willfully rebuked defendants' treatment efforts.

**Am Jur 2d, Workers' Compensation §§ 389, 390.**

JOHNSON v. JONES GROUP, INC.

[123 N.C. App. 219 (1996)]

**Workers' compensation: reasonableness of employee's refusal of medical services tendered by employer. 72 ALR4th 905.**

**What amounts to failure or refusal to submit to medical treatment sufficient to bar recovery of workers' compensation. 3 ALR5th 907.**

Appeal by plaintiff from Opinion and Award entered 7 June 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 September 1995.

*Shyllon & Shyllon, by Prince E.N. Shyllon, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Steven M. Sartorio, for defendant appellees.*

JOHN, Judge.

Plaintiff appeals denial by the North Carolina Industrial Commission (the Commission) of workers' compensation benefits based upon his "unjustifiab[le] refus[al] to cooperate with defendants' rehabilitative efforts despite order of the Industrial Commission." We find certain of plaintiff's arguments persuasive and vacate the order of the Commission.

Pertinent facts and procedural information are as follows: On 20 March 1991, plaintiff fell fifty feet down an elevator shaft and suffered a catastrophic closed head injury while working as a carpenter for defendant employer. Plaintiff initially received treatment in the acute care unit at Wake Medical Center and was transferred 25 April 1991 to Wake Rehabilitation Hospital. On 20 June 1991, plaintiff was admitted to Carolina Re-Entry/Learning Services (Learning Services), an inpatient facility at which he was treated by a multi-disciplinary team, including a social worker, a neuropsychologist, and physical, occupational, and speech therapists. Plaintiff's "graduation" date from Learning Services was to be 30 November 1991.

Plaintiff, however, became increasingly non-compliant with the plan of treatment and ultimately left Learning Services on or about 24 October 1991. After issuing a written warning to plaintiff that continued benefits were contingent upon his pursuing prescribed medical treatment, the Commission approved defendants' Form 24 application to terminate benefits 9 December 1991. Defendants continued to

pay for plaintiff's medical treatment while he lived in North Carolina, and he was evaluated by Drs. Baldwin, O'Brien, and Comer in the months succeeding his departure from Learning Services.

In February 1992, plaintiff took up residence with his parents in Poughkeepsie, New York. According to plaintiff's mother, he became hostile and threatening while in New York, and was admitted to the mental health unit of Saint Francis Hospital in Poughkeepsie for two weeks in August 1992. The most recent documentation in the record reflects treatment of plaintiff in October 1992 by Dr. Silverman at the Veterans Administration hospital in Montrose, New York, for "organic brain syndrome [secondary] to closed head trauma."

A hearing regarding termination of plaintiff's benefits was held 29 October 1992 before Deputy Commissioner Tamara R. Nance. Further benefits were denied to plaintiff "until such time as his unjustifiable refusal to participate in rehabilitation and treatment directed by defendants, ceases." Upon appeal, the Commission upheld the decision of the Deputy Commissioner in an Opinion and Award (the Opinion) which concluded:

> Plaintiff unjustifiably refused to cooperate with defendants' rehabilitative efforts despite order of the Industrial Commission. Pursuant to G.S. § 97-25, his refusal shall bar him from further compensation until such refusal ceases. Moreover, because the circumstances in this case did not justify plaintiff's refusal, no compensation shall be paid for the period of suspension, even should plaintiff now agree to participate in rehabilitation.

Plaintiff filed timely notice of appeal to this Court.

N.C.G.S. § 97-25 (1991), cited by the Commission, states in pertinent part:

> Medical compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.
>
> . . . .
>
> The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee

JOHNSON v. JONES GROUP, INC.

[123 N.C. App. 219 (1996)]

from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal, in which case, the Industrial Commission may order a change in the medical or hospital service.

"Refusal" is defined in Black's Law Dictionary 1282 (6th ed. 1990) as:

[T]he declination of a request or demand, or the omission to comply with some requirement of law, as the result of a positive intention to disobey. . . . [T]he word is often coupled with "neglect," as if a party shall "neglect or refuse" to pay a tax, file an official bond, obey an order of court, etc. But "neglect" signifies a mere omission of a duty, which may happen through inattention, dilatoriness, mistake, or inability to perform, while "refusal" implies the positive denial of an application or command, or at least a mental determination not to comply.

Furthermore, "refuse" is defined by Black's, *supra*, in part as follows:

"Fail" is distinguished from "refuse" in that "refuse" involves an act of the will, while "fail" may be an act of inevitable necessity.

*See also Schofield v. Tea Co.*, 299 N.C. 582, 588, 264 S.E.2d 56, 61 (1980) ("failure" in G.S. § 97-25 provision regarding employer's "failure" to provide medical care distinguished from employer's "wilful refusal"). Hence "refusal" as employed in the statute connotes a willful or intentional act.

Plaintiff contends he did not "refuse" to cooperate with defendants' rehabilitation plan, because his personality and mental and cognitive abilities were so fundamentally altered as a result of the 20 March 1991 brain injury that he was reduced to an uncooperative and unmotivated state. He claims he should not be "punished" due to a status over which he has no control.

In response, defendants first insist the Commission's decision should be upheld because "there is no evidence that the plaintiff's refusal to participate in the Learning Services program was anything but a voluntary, conscious decision on his part." Defendants' contention to the contrary, the record is replete with evaluations by numerous professionals who diagnosed deficits in plaintiff's cognitive functioning.

In a report filed 24 September 1991, for example, Learning Services personnel found that:

> Ronald . . . has demonstrated variable motivation to participate in treatment and decreased insight in regard to the nature of his deficits.

A follow-up assessment by Learning Services dated 24 October 1991 indicated that plaintiff:

> has no physical difficulties but cognitive deficits prevent accurate completion of work tasks. He has much difficulty with problem solving, and attention and concentration which results in poor work quality. Ron also has much difficulty in accepting supervision and responding to feedback. He makes the same mistakes repeatedly and has not demonstrated the ability to learn from prior mistakes over a period of several weeks. . . . He is easily distracted by others and their activities in the work environment.

As the result of a 29 January 1992 examination by Dr. O'Brien, who had treated plaintiff while an in-patient at Wake Rehabilitation Hospital, the physician noted, "He has diminished initiative and limited insight into his present deficits." After a 3 March 1992 appointment, Dr. O'Brien opined:

> He is still functioning at a borderline range, with a verbal IQ of 72 and a performance IQ of 75. He has significant difficulties with memory and with initiation.

Further, Dr. Comer, a psychiatrist who evaluated plaintiff in December 1991 and several times thereafter, testified at deposition:

> [After plaintiff's initial visit,] I followed him over the next several months, and he never improved. . . . He didn't want to come back, didn't want to be here, and generally seemed to lack any motivation, any insight into his difficulties. . . . [A]s time progressed [] it became clear that . . . he was limited, not only by the injury to his cognitive and intellectual abilities, but he was more so disabled by the brain injuries resulting in a lack of motivation, a low frustration tolerance and the personality change with irritability and withdrawal and a lack of ability to relate well to other people; that all of that combined made it impossible, really, for him to make the kind of progress he'd have to make to be able to even wish to go to work; that, in a sense, this kind of brain injury injured his motivational system as much as anything else.

When asked if he had any knowledge as to why plaintiff had not been able to complete the Learning Services program, Dr. Comer replied:

> Yes. He didn't want to. As long as he didn't want to—he doesn't have enough frustration tolerance to be able to complete anything he doesn't want to do. He's like a two- or three-year-old child in terms of that function.

Finally, the following impression of plaintiff's condition was noted in the 14 August 1992 discharge summary prepared at St. Francis Hospital:

> Cognitive functioning was grossly impaired. . . . Pre-morbid personality prior to trauma was reportedly within normal limits. The patient does not appear to understand the reason for his hospitalization. Judgement [sic] was impaired, insight into his illness was nil. . . . He demonstrates affective instability and alleged recurrent outbursts of aggression and threats toward mother. Also markedly impaired social judgement [sic], marked apathy, indifference and paranoid ideation. This persistent personality disturbance represents a change from a previously normal state of functioning due to head trauma as demonstrated by MRI. Because of structural damage to the brain this disorder will tend to persist.

In further response to plaintiff's contention, defendants cite *Watkins v. City of Asheville*, 99 N.C. App. 302, 392 S.E.2d 754, *disc. review denied*, 327 N.C. 488, 397 S.E.2d 238 (1990), asserting it furnishes conclusive support for the Commission's determination. We are persuaded otherwise.

In *Watkins*, a workers' compensation claimant who declined to undergo back surgery recommended by her orthopaedic surgeon was denied further benefits based upon G.S. § 97-25. Quoting *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 290, 229 S.E.2d 325, 329 (1976), *disc. review denied*, 292 N.C. 467, 234 S.E.2d 2 (1977), this Court observed:

> The general rule is that where the surgery is of serious magnitude and risk, involves much pain and suffering and is of uncertain benefit, the refusal of the claimant to undergo surgery is reasonable and will not prejudice his claim.

*Watkins*, 99 N.C. App. at 304, 392 S.E.2d at 756. We then held the Commission had properly ruled

"[t]hat the surgery recommended by plaintiff's physician ha[d] a high probability of significantly reducing the period of plaintiff's disability and would [have been] sought by a similarly situated reasonable man."

*Id.* at 306, 392 S.E.2d at 757.

In their brief, defendants make the following argument that the standard set forth in *Watkins* is controlling:

Applying an objective, reasonableness standard as required by the *Watkins* case to the facts of the instant case, it is clear that the plaintiff's refusal to participate in the Learning Services program and in the other efforts to rehabilitate him was unreasonable and unjustified. The fact is that the rehabilitation programs in which the plaintiff was enrolled did *not* involve surgery, they were not of a serious magnitude and risk to the plaintiff's health and safety, they did not cause him any pain or suffering and the programs were only going to inure to the plaintiff's benefit in the long run. Any reasonable person would have participated in the program.

We agree *Watkins* sets forth a "reasonableness" test to the decision of whether to deny benefits to a claimant refusing treatment, *i.e.*, an analysis of whether a reasonable person who is motivated to improve his or her health would accept the proffered treatment. However, the question remains whether such a test is appropriate in circumstances involving a claimant who, due to mental and cognitive impairments, may not qualify as a "reasonable person." *See Jackson v. City of Gretna*, 376 So.2d 612, 614 (La. Ct. App. 1979) (in view of claimant's "very limited mental ability," his failure to understand importance of rehabilitative exercise and his lack of self-discipline in performing exercises on a consistent basis "do not necessarily constitute intentional disobedience or willfulness," but rather "are more probably the natural result of gross ignorance;" claimant not denied benefits for failure to cooperate with rehabilitative program).

In cases where the ability of a claimant to make rational decisions regarding his or her welfare is at issue (and, we emphasize, *only* in such cases), we believe the Commission must make findings regarding the claimant's ability to act as a "reasonable person" in weighing medical options and making treatment decisions before denying benefits under G.S. § 97-25. Accordingly, when encountering a claimant defending failure to accept treatment by denial of the ability to make

JOHNSON v. JONES GROUP, INC.

[123 N.C. App. 219 (1996)]

rational decisions in that regard, the Commission, in order to bar compensation under G.S. § 97-25, must record findings that the claimant possessed the ability to think and act as a reasonable person and, notwithstanding, willfully rebuked defendants' treatment efforts. If the claimant is found to have willfully refused treatment, then the Commission may go on to determine if "the circumstances justified the refusal," G.S. § 97-25, such that a reasonable person might have declined the proffered treatment. *See Watkins*, 99 N.C. App. at 305, 392 S.E.2d at 757.

The foregoing interpretation of G.S. § 97-25 comports with the avowed purpose of the Workers' Compensation Act.

> It must be remembered the Workmen's [now Workers'] Compensation Act requires the Industrial Commission and the courts to construe the compensation act liberally in favor of the injured workman. . . . The philosophy which supports the Workmen's Compensation Act is that the wear and tear of the workman, as well as the machinery, shall be charged to the industry.

*Porterfield v. RPC Corp.*, 47 N.C. App. 140, 143-144, 266 S.E.2d 760, 762 (1980) (quoting *Cates v. Construction Co.*, 267 N.C. 560, 563, 148 S.E.2d 604, 607 (1966)). If "wear and tear" of a worker includes brain damage to the extent he becomes incapable of cooperating with rehabilitation efforts, the policy of liberality in favor of that injured worker precludes denial of benefits based upon his "failure" to accept, as opposed to willful "refusal" of, such treatment. We observe instances of this type likely will occur relatively infrequently, and the consequent burden on industry to absorb such claims thus will not be substantial.

Turning to the case *sub judice*, we conclude the Commission's Opinion fails to reflect it considered evidence of plaintiff's lack of cognitive ability prior to ruling he "unjustifiably refused to cooperate with defendants' rehabilitative efforts." Rather, the Commission appears to have focused upon whether the treatment proffered by defendants was beneficial, such that a "reasonable person" would not have refused it.

For example, the Opinion sets forth in detail the treatment philosophy and methods employed at Learning Services, and contains the observation that the Commission could not "conceive of a better program to assist individuals with brain injuries to gradually reenter

JOHNSON v. JONES GROUP, INC.

[123 N.C. App. 219 (1996)]

the community and again become functional." In addition, the Opinion emphasizes that all health professionals encountered by plaintiff agree he is in need of additional rehabilitation. Such observations, however, do not address the issue of plaintiff's ability to cooperate with efforts to rehabilitate him.

We also observe the Opinion concludes with a recommendation that plaintiff be appointed a guardian. To qualify for appointment of a guardian in this state, an adult must be found "incompetent", *i.e.*, to

lack[] sufficient capacity to manage his own affairs or to make or communicate important decisions concerning his person, family, or property whether such lack of capacity is due to mental illness, . . . disease, injury, or similar cause or condition.

N.C.G.S. § 35A-1101(7) (1995); N.C.G.S. § 35A-1112 (1995).

Thus, on the one hand, the Commission intimates a concern that plaintiff lacks the capability to make decisions concerning his welfare, yet fails on the other to express its consideration of the effect of that want of capacity upon plaintiff's failure to comply with treatment.

In sum, recognizing the axiom that it is not the province of this Court to weigh the evidence or find facts, we vacate the Commission's denial of benefits to plaintiff and remand this matter for further findings and subsequent order consistent with the opinion herein. *See Wood v. Stevens & Co.*, 297 N.C. 636, 640, 256 S.E.2d 692, 695 (1979) (if Commission's findings of fact insufficient to enable Court to determine parties' rights, case must be remanded for further findings in light of legal principles enunciated in Court's opinion).

We note in conclusion plaintiff argues in his reply brief that the Form 24 application approved by the Commission was legally insufficient to terminate plaintiff's benefits. This argument is not contained in plaintiff's assignments of error in the record on appeal, and we decline to address it. *See* N.C.R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal").

Vacated and remanded.

Judges MARTIN, John C. and McGEE concur.