The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Holmes and the briefs and arguments on appeal. Based upon the entire record of evidence, the appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioners holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 22 March 2000 as:
 STIPULATIONS
1. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times.
2. CNA Risk Management is the carrier on the claim.
3. Defendant-employer regularly employs three (3) or more employees and all parties are bound by the provisions of the North Carolina Workers Compensation Act.
4. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
5. Plaintiff was employed by defendant-employer on 11 June 1997 as a truck driver.
6. Plaintiffs average weekly wage on 11 June 1997 was $594.71, yielding a compensation rate of $396.49 per week.
 ***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, who was fifty-one years of age at the time of the hearing before the Deputy Commissioner on 22 March 2000, left school after the eighth grade in order to serve in the undeclared war in Vietnam. Plaintiff was stationed in Vietnam as a member of the Marine Corps for over eighteen months. While serving in Vietnam, plaintiffs hand was shot, he had shrapnel embedded in his chest and buttocks, and he was exposed to Agent Orange.
2. Subsequent to serving in the war, plaintiff began working as a truck driver. This was the only type of occupation plaintiff held from the date of his military discharge until his termination by defendant-employer.
3. Plaintiff was hired by defendant-employer in February 1991 to drive a front-end loader garbage truck.
4. In March 1996, plaintiff was diagnosed with cancer of the larynx caused by his smoking and exposure to Agent Orange. As a result of this condition, plaintiff had his teeth and larynx removed. Following the removal of his teeth, plaintiff developed Bells Palsy, which caused the right side of his face to droop. In addition, plaintiff experiences a periodic tightening of muscles in his neck as the result of his larynx surgery.
5. As further treatment for his cancer, plaintiff received radiation through July 1996. Plaintiff continued to work for defendant-employer throughout this period. The radiation treatments ended on 19 June 1996. By October 1996, there was no evidence of the cancer.
6. On 11 June 1997, plaintiff, while driving his garbage truck for defendant-employer, was involved in a motor vehicle accident. The accident occurred when the right front tire on the truck exploded while plaintiff was traveling fifty-five (55) miles per hour. To avoid hitting another vehicle, plaintiff steered his truck onto the right side of the road and traveled approximately five hundred to six hundred feet in the direction of an embankment that dropped approximately thirteen feet down into a dry streambed. As his truck was approaching the embankment, plaintiff attempted to turn to the left back towards the roadway, but crashed into a guardrail. The impact of this collision tore off forty feet of guardrail. After hitting the guardrail, the truck, which weighed 40,700 pounds, turned over onto its right side in the dry streambed at the bottom of the embankment. As his truck fell over into the ditch, plaintiff hit his head on the window and on the trucks radio. When the truck came to rest, plaintiff was partially upside down, suspended in the air with his seatbelt holding him.
7. As the result of this accident, plaintiff sustained lacerations to the top of his head, bruises on his neck and back as well as stiffness, soreness, and tenderness in his arms, back, and neck. The paramedics on the scene recommended that plaintiff go to the hospital, but he declined because he had an appointment with his oncologist, Dr. Charles Neal, that afternoon.
8. At this pre-scheduled appointment, Dr. Neal performed a limited physical exam focusing on the orocavity, oropharynx, and larynx. Dr. Neal made no note of any major injuries as a result of the accident and did not recall at his deposition what plaintiff reported to him regarding the accident.
9. There is no record indicating that plaintiff reported any injuries as the result of the accident to the investigating officer, nor is there record of plaintiff immediately reporting his injuries to representatives of defendant-employer. However, the Full Commission finds that the lack of a written record of such reports is not indicative of deceit or a lack of credibility on plaintiffs part, given plaintiffs education and work experience. In fact, plaintiffs testimony regarding the circumstances of his accident and his injuries is accepted as credible.
10. Plaintiff reported to work on 12 June 1997, but was sent home after approximately two hours because he was unable to drive due to the accident. On 13 June 1997, defendant-employer requested that he come in to work despite his condition because they were short-handed. Plaintiff continued to work for defendant-employer through August 1997.
11. In late June 1997, plaintiff began to experience seizures in his chest or middle torso area. The seizures lasted from a few seconds to as long as thirty to forty seconds. Plaintiff then developed paralysis on one side.
12. On 11 July 1997, plaintiff contacted Dr. Neal and informed him about the paralysis and right arm numbness. Plaintiff expressed to Dr. Neal that his current physical symptoms were different from those he had experienced as the result of his Bells Palsy. Dr. Neal was initially of the opinion that these symptoms could be the result of a recurrence of plaintiffs Bells Palsy, but also that the source of the symptoms could also be another neurological event. Dr. Neal then referred plaintiff to a neurologist, Dr. Alfred A. DeMaria, Jr.
13. Dr. DeMaria first examined plaintiff on 16 July 1997. By that date, plaintiff had experienced several seizures. Initially, plaintiff did not inform Dr. DeMaria of his motor vehicle accident because plaintiff believed at the time that his problems were related to his cancer. Dr. DeMaria was concerned about the seizures plaintiff had experienced, and noted that plaintiff might also be experiencing mini-strokes or a transient ischemic attack. Dr. DeMaria prescribed Dilantin, an anti-convulsant medication.
14. On 11 August 1997, plaintiff called Dr. DeMaria and reported that he had experienced seizures on 9 August and 10 August 1997. Because of plaintiffs condition and an increased Dilantin dosage, Dr. DeMaria restricted plaintiff from driving, climbing, or working around open water or dangerous machinery. In addition, under federal law, plaintiff was not allowed to drive commercial vehicles so long as he was taking the prescription drug Dilantin.
15. Once he began experiencing seizures, plaintiff reported them to Ms. Vanessa Casteen, who handled medical claims for defendant-employer. Plaintiff informed Ms. Casteen that he believed his seizures were connected to the accident of 11 June 1997 and that he had been referred to Dr. DeMaria.
16. Because of his symptoms and inability to drive, plaintiff ceased working for defendant-employer on 13 August 1997. Plaintiff then began receiving short-term disability benefits. At the end of six months, plaintiffs short-term disability ended. He did not have insurance for long-term disability. In September 1998, defendant-employer terminated plaintiff.
17. In August 1998, counsel for plaintiff wrote Dr. DeMaria requesting an opinion as to whether plaintiffs seizures were causally related to the 11 June 1997 accident. After some apparent confusion due to the fact that Dr. DeMaria did not know of the accident, Dr. DeMaria stated that it would be difficult to attribute plaintiffs seizure episodes to the accident in question absent additional information. Dr. DeMaria then received additional information regarding what precisely happened during the accident.
18. Subsequent to receiving all of the information regarding the accident of 11 June 1997, Dr. DeMaria opined that the head trauma sustained by plaintiff in the accident was the proximate cause of the plaintiffs seizures. Dr. DeMarias opinion is based upon several factors. These factors include plaintiffs positive response to anti-convulsant medications, the lack of evidence to suggest any other possible causes, and the proximity of the dates of the accident and the beginning of the seizures.
19. Dr. DeMarias opinion was the only expert medical opinion given on causation in this matter and is given great weight by the Full Commission.
20. Defendants have failed to produce sufficient evidence upon which to find that plaintiffs termination was for misconduct or fault for which a non-disabled employee would have been terminated.
21. The incident on 11 June 1997 constituted the introduction of unusual circumstances into plaintiffs work routine.
22. On 11 June 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
23. Plaintiffs seizures were a direct and natural result of plaintiffs 11 June 1997 injury by accident.
24. As the result of his 11 June 1997 injury by accident and associated conditions, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment for the period of 13 August 1997 through the present and continuing.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 11 June 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6). Plaintiffs seizures were a direct and natural result of plaintiffs 11 June 1997 injury by accident. Id.
2. Defendants have failed to produce sufficient evidence upon which the Full Commission could find that plaintiffs termination was for misconduct or fault for which a non-disabled employee would also have been terminated. See Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 587 (1996).
3. As the result of his 11 June 1997 injury by accident, plaintiff is entitled to have defendants pay ongoing total disability compensation at the rate of $396.49 per week for the period of 13 August 1997 through the present and continuing until such time as he returns to work or until further order of the Commission. N.C. Gen. Stat. 97-29.
4. Defendants are entitled to a credit for short-term disability benefits paid to plaintiff for a six-month period beginning of 13 August 1997. N.C. Gen. Stat. 97-42.
5. Plaintiff is entitled to have defendants pay for all related medical expenses incurred as a result of his 11 June 1997 injury by accident. N.C. Gen. Stat. 97-25; N.C. Gen. Stat. 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $396.49 per week for the period of 13 August 1997 through the present and continuing until such time as he returns to work or until further order of the Commission. To the extent the amounts have accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to a credit and to the attorneys fee approved herein.
2. Defendants shall pay for all medical expenses related to plaintiffs 11 June 1997 injury by accident.
3. Defendants are entitled to a credit for short-term disability benefits paid to plaintiff for a six-month period beginning of 13 August 1997.
4. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. From the compensation that has accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs.
This is the ___ day of June, 2001.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER