***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted the following: an Incident Report dated 11 July 2000, which was admitted into the record, and marked as Plaintiff's Exhibit (1); a Job Description for a Machine Operator (I), which was admitted into the record, and marked as Plaintiff's Exhibit (2); an Incident Report dated 4 October 2000, which was admitted into the record, and marked as Plaintiff's Exhibit (3), and; a Job Description for a Machine Operator (II), which was admitted into the record over defendants' objection, and marked as Plaintiff's Exhibit (4).
Also at the hearing before the Deputy Commissioner, defendants submitted a Video Tape of Jobs Performed at defendant-employer's plant, which included audible discussions of those taking the video. Plaintiff's objection to this audio portion was sustained, and subsequent to the hearing, defendants submitted a Video Tape of Jobs Performed at defendant-employer's plant without audio, which is admitted into the record, and marked as Defendants' Exhibit (1).
At the hearing before the Deputy Commissioner, plaintiff moved to have the claims associated with I.C. No. 069052 and I.C. No. 184491, both involving injuries to plaintiff's right arm, consolidated. Defendants did not object to this motion, and said claims were consolidated by order of Deputy Commissioner Houser dated 10 January 2002.
Subsequent to the hearing before the Deputy Commissioner, plaintiff submitted the following; a Letter To Dr. Supple, dated 14 November 2001, Plaintiff's School Records, and Documents from Plaintiff's Personnel File. These documents are admitted into the record, and marked collectively as Plaintiff's Exhibit (5).
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record, and marked as Stipulated Exhibit (1), and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. An employer-employee relationship existed between plaintiff and defendant-employer on all relevant dates herein.
5. On 11 July 2000, the Travelers Insurance Company was the carrier on the risk.
6. Plaintiff alleges to have sustained a compensable injury on 11 July 2000.
7. Plaintiff was paid for the entire day of the alleged incident.
8. Defendants have paid no indemnity benefits on this claim.
9. Defendants have paid $ 8,440 in medical expenses as of 23 October 2001.
10. Plaintiff's average weekly wage on 11 July 2000 was $376.15, yielding a compensation rate of $250.74, based upon the Industrial Commission Form 22 Wage Chart completed by defendant-employer.
11. At the hearing before the Deputy Commissioner, the parties introduced the following exhibits; a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2), and; a Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3).
12. Subsequent to the hearing before the Deputy Commissioner, the parties submitted a Packet of Defendant-Employer's Records of Hours Worked by Plaintiff, which was admitted into the record, and marked as Stipulated Exhibit (4).
 ***********
Based upon the evidence of record, the undersigned enters the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 53 years of age, with his date of birth being 6 August 1948. Plaintiff attended school into the tenth grade, and has not received any other specialized training or education. Prior to working for defendant-employer, plaintiff's work experience was limited to manual labor jobs, including truck driving and sanding.
2. Defendant-employer is in the business of manufacturing wooden seats for commercial enterprises. Plaintiff began working for defendant-employer as a machine operator on approximately 10 January 2000. Plaintiff has primarily operated molder machines during the period of his employment with defendant-employer, but has on occasion operated other machines as well. As a machine operator, plaintiff's regular hours were 6:00 a.m. to 2:30 p.m., unless he worked overtime.
3. On 11 July 2000, plaintiff was working as a machine operator on a molder machine. As a molder operator, plaintiff was required to change the gears by pulling a lever on a gear box. On this date, the gear box on plaintiff's molder machine was not operating properly, causing the gears to stick and requiring plaintiff to use extra force in changing from one gear to another. During one such gear change, plaintiff was on his knees, attempting to change a gear when the molder machine suddenly jerked, and shifted into gear, causing plaintiff to experience pain in his right shoulder and arm.
4. Following this incident, plaintiff immediately reported his injury to the proper personnel at defendant-employer's facility, and was instructed to report to MedCentral for medical attention. Plaintiff's Industrial Commission Form 18 was not filed until 22 September 2000. At MedCentral, plaintiff was diagnosed as having sustained a neck and shoulder sprain. Plaintiff was prescribed medications, and was released to return to work with restrictions of limited use of the right arm, and no overhead lifting.
5. On 13 July 2000, plaintiff returned to MedCentral with complaints of pain associated with activity, intermittent paresthesia, and weakness in his right shoulder and arm. Following this examination, plaintiff was referred to physical therapy. Plaintiff continued to work with restrictions for defendant-employer during the period he participated in physical therapy. However, plaintiff's condition did not improve with therapy, and on 25 July 2000, an MRI was recommended for his neck and shoulder. The MRI was performed on 2 August 2000.
6. On 23 August 2000, upon referral plaintiff was examined by Dr. Kevin Supple of Greensboro Orthopaedic Center. Based upon his review of the MRI and his examination of plaintiff, Dr. Supple diagnosed plaintiff as having right shoulder rotator cuff tendinosis, a right rotator cuff tear, and right shoulder AC joint arthrosis. Dr. Supple released plaintiff to return to light duty work with restrictions of no use of the right arm, which was placed in a sling, and recommended an arthroscopic surgical procedure to repair the rotator cuff tear. Dr. Supple opined that plaintiff's right shoulder condition was caused by the work related incident on 11 July 2000.
7. Plaintiff's surgery was scheduled for 12 September 2000. In discussions prior to the scheduled surgery date, Dr. Supple could not guarantee to plaintiff that there would be an improvement in his condition, and further advised that there was a chance his condition could become worse. On 12 September 2000, plaintiff presented to the surgical center for the procedure. Following a consultation with the anesthesiologist, plaintiff was concerned about proceeding with the surgery due in part to his high blood pressure, and a heart condition. Ultimately, based upon all of the related factors, plaintiff made the decision not to have the surgery. The surgery cancellation fee was $600.00.
8. On 21 September 2000, Dr. Supple gave plaintiff an injection in his right shoulder, and discussed again the option of a surgical procedure. Plaintiff remained fearful of the risks of surgery, and opted for continued conservative treatment. Accordingly, Dr. Supple recommended additional physical therapy, and assigned new work restrictions of not lifting over ten pounds with the right arm, and no overhead use of the right arm. Due to increased pain in plaintiff's right arm, Dr. Supple later again revised the work restrictions to no use of the right arm.
9. On 5 October 2000, plaintiff tripped on sandpaper while at work for defendant-employer and fell, hitting his right shoulder. This incident is documented in Plaintiff's Exhibit 3. Following this incident, plaintiff was examined Dr. Supple who opined that plaintiff had not sustained any new injury, but had exacerbated his previous injury. Dr. Supple prescribed medication, continued physical therapy and the work restriction of no use of the right arm.
10. Since 11 July 2000, plaintiff has attempted to continue working within the restrictions assigned by his physicians as a machine operator. During this period, plaintiff has been assigned to various machines, including the corner block machine, the Bell machine, the wide belt sander, the boring machine, the mark up table, as well being assigned to stack materials on shelves. These jobs all require frequent handling of raw and finished pieces of wood, reaching, and some upward or overhead movement with the arms. The pieces of wood handled by plaintiff while performing these duties vary in size depending on production, the machine being operated, and the type of wood being used.
11. According to the physical demands classification of the Dictionary of Occupational Titles, defendant-employer's job description of the Machine Operator positions indicates that these jobs with defendant-employer are heavy labor jobs, requiring frequent lifting of up to 60 pounds and pushing hand trucks which may weigh as much as several hundred pounds. These job descriptions are reflected in Plaintiff's Exhibits 2 and 4. According to the Dictionary of Occupational Titles, the position of Machine Operator usually is a medium capacity job.
12. Following the assignment of his work restriction of no use of the right arm, plaintiff performed his duties with only his left arm. As a result, plaintiff began experiencing problems with his left arm as well, and became concerned about his ability to continue performing the duties of machine operator. When plaintiff began experiencing problems with his left arm, he notified defendant-employer of this development, but no action was taken.
13. Due to plaintiff's continued problems attempting to perform the duties of a machine operator, Ms. Meg Blackwood, his rehabilitation professional, was contacted regarding obtaining a job description, and possibly a job analysis. However, Ms. Blackwood did not visit the work site to observe the jobs plaintiff was performing, and did not prepare a job analysis.
14. On 6 December 2000, Dr. Supple met with plaintiff and Ms. Blackwood regarding plaintiff's ability to work. On that date, Dr. Supple released plaintiff to return to work with permanent restrictions of performing only sedentary work, no lifting over ten pounds, and avoiding activities that aggravated his right shoulder. Additionally, Dr. Supple opined that plaintiff had reached maximum medical improvement and assigned him plaintiff a 15% permanent partial disability rating to his right arm. At his deposition, Dr. Supple testified that this rating is most likely the same rating he would have assigned had the surgery proceeded with good results.
15. Prior to the meeting on 6 December 2000, Dr. Supple was sent a correspondence regarding plaintiff's concerns about his ability to perform the machine operator position, as well as his concern that he was damaging his left arm through overuse. This correspondence is dated 27 November 2000. In his deposition, Dr. Supple testified that he had these concerns under consideration when he met with plaintiff on 6 December 2000 to review defendant-employer's job description. Dr. Supple further testified that it was his primary goal to identify a job which plaintiff could perform without aggravating his shoulder condition. Finally, based upon Dr. Supple's testimony, it is clear that he viewed plaintiff's release, and return to work as a trial return to work.
16. In January 2001, defendant-employer faced a production decrease and was unable to retain all of its Machine Room employees on full 40 hour schedules. Therefore, defendant-employer offered its employees the opportunity to voluntarily take time off from work and collect unemployment benefits. Plaintiff was also made this offer, and due to his continued problems in the performance of the machine operator position, he elected to take the voluntary lay off.
17. Following a period in which plaintiff did not work pursuant to the voluntary lay off in January and February 2001, he was contacted by defendant-employer and instructed to return to work on 6 March 2001. On the day after he received this notification, plaintiff was hospitalized under the care of a cardiologist, and subsequently went on medical leave for that condition. Upon his release from care from the cardiologist, plaintiff returned to work as a machine operator on 11 April 2001.
18. Subsequent to his return to work on 11 April 2001, plaintiff continued to experience pain in his left arm. However, plaintiff was not given approval by defendant-employer to return to Dr. Supple for this condition because of its contention that this was not a compensable injury. Consequently, on 18 May 2001, plaintiff returned to Dr. Supple on his own. Following an examination, Dr. Supple diagnosed plaintiff as having advanced rotator cuff tendinosis, and a possible left rotator cuff tear in his left shoulder. Dr. Supple has opined that plaintiff's left arm and shoulder condition were caused by the overuse of plaintiff's left arm while on light duty restrictions as the result of his right arm and shoulder injury.
19. At this examination, Dr. Supple assigned plaintiff permanent, light duty restrictions of no lifting over ten pounds, and no overhead or repetitive use of the right, or left arm. Plaintiff gave defendant-employer a copy of his restrictions, but was instructed to return to work at his normal job as a machine operator, although it could not be determined exactly upon which machine plaintiff was to work. Thereafter, plaintiff informed defendant-employer that he had forgotten to take his medication that day, and he was given permission to go home to take it. Upon arriving home, plaintiff determined that he would not return to work because of his inability to perform the machine operator job. On 30 May 2001, defendant-employer sent plaintiff a certified letter informing him that he had been deemed to have voluntarily resigned as of 25 May 2001.
20. On 12 July 2001, Dr. Supple signed an Industrial Commission Form 28U indicating an unsuccessful trial return to work, which was forwarded to the Industrial Commission and defendants. Prior to his deposition, Dr. Supple viewed the video tape marked as Defendants' Exhibit 1. After viewing the video, Dr. Supple remained of the opinion that plaintiff was not able to perform the position of machine operator.
21. Based upon the credible evidence of record, the Full Commission finds that plaintiff's inability to perform the machine operator position provided to him by defendant-employer subsequent to 18 May 2001 was a failed trial return to work. Furthermore, because the machine operator position was not suitable given plaintiff's restrictions, his refusal perform it was justified.
22. The circumstances of plaintiff's injury on 11 July 2000, constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, and therefore constituted an "accident."
23. On 11 July 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As a direct and natural result of, and causally related to his 11 July 2000 injury by accident, plaintiff developed advanced rotator cuff tendinosis, and other problems related to overuse of his left arm and shoulder.
24. Plaintiff's fall on 5 October 2000 constituted an interruption of his regular work routine, and the introduction thereby of unusual conditions likely to result in unexpected consequences, and was therefore an "accident."
25. On 5 October 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As a direct and natural result of, and causally related to his 5 October 2000 injury by accident, plaintiff sustained an aggravation of his right arm and shoulder condition.
26. Defendants have failed to produce sufficient evidence upon which to find that plaintiff's termination on 30 May 2001 was for reasons unrelated to his compensable injury, and was for misconduct or fault for which a non-disabled employee would also have been terminated.
27. Under the current law in North Carolina, a plaintiff who may be entitled to benefits under N.C. Gen. Stat. § 97-29 or N.C. Gen. Stat. § 97-30, as well as to benefits under N.C. Gen. Stat. §97-31, is entitled to select the more favorable remedy. On 6 December 2000, Dr. Supple opined that plaintiff reached maximum medical improvement, and was assigned a 15% permanent partial disability rating. Notwithstanding this rating, plaintiff became totally disabled as of 18 May 2001. Plaintiff's more favorable remedy under the facts of this case is an award of total disability benefits under N.C. Gen. Stat. § 97-29.
28. As the result of his 11 July 2000 injury by accident, his 5 October 2000 injury by accident, and his related left arm and shoulder conditions, plaintiff has been unable to earn any wages in his former position with defendant-employer or in any employment for the period of 18 May 2001 through the date of hearing before the Deputy Commissioner and continuing.
29. Based upon the credible evidence of record, particularly Dr. Supple's testimony his disability rating would likely be no different had plaintiff undergone the surgery on 12 September 2000, plaintiff's decision to decline that procedure was not unreasonable; however, defendants are entitled to reimbursement for the cancellation fee.
30. Plaintiff's delay in providing written notification of his injury to defendants is reasonably excused given that he was aware defendant-employer had actual knowledge of the injury, and defendants were in no manner prejudiced by this delay.
31. Plaintiff's pursuit of this matter has been based upon reasonable grounds and, therefore, defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
32. No evidence was presented at the hearing before the Deputy Commissioner or prior to the close of the record upon which to enter a competent finding regarding plaintiff's allegation related to alleged exparte contacts by defendants with plaintiff's treating physician.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Because plaintiff's delay in providing written notification of his injury to defendants is reasonably excused, and defendants were in no manner prejudiced by this delay, plaintiff's claim is not barred. N.C. Gen. Stat. § 97-22.
2. On 11 July 2000, plaintiff sustained an injury by accident to his right shoulder arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As a direct and natural result of, and causally related to his 11 July 2000 injury by accident, plaintiff developed advanced rotator cuff tendinosis, and other problems related to overuse of his left arm and shoulder. Id.
3. On 5 October 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer as a result of a fall at work. Id. As a direct and natural result of, and causally related to his 5 October 2000 injury by accident, plaintiff sustained an aggravation of his right arm and shoulder condition. N.C. Gen. Stat. § 97-2(6).
4. The machine operator position provided by defendants to plaintiff following his 11 July 2000 injury by accident was unsuitable, and his refusal of it was justified. N.C. Gen. Stat. § 97-32. Furthermore, defendants have failed to produce sufficient evidence upon which to find that plaintiff's termination on 30 May 2001 was for reasons unrelated to his compensable injury, and was for misconduct or fault for which a non-disabled employee would also have been terminated. Seagraves v.Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996). Accordingly, plaintiff did not constructively refuse suitable work with defendant-employer. N.C. Gen. Stat. § 97-32; Seagraves v. Austin Co.of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996).
5. If supported by the facts of the case, a claimant is entitled to select the more favorable remedy between receiving benefits under G.S. § 97-31, G.S. § 97-30 or under G.S. § 97-29. Gupton v.Builders Transport, 320 N.C. 38, 357 S.E.2d 674 (1987). The more favorable remedy justified under the facts of this case is an award of total disability benefits under N.C. Gen. Stat. § 97-29. The fact that a medical professional opined that plaintiff had reached maximum medical improvement is not determinative on the issue of whether he is totally disabled, as this is not equivalent to plaintiff being capable of earning the same wage he earned prior to his injury by accident. Brownv. S N Communications, Inc., 124 N.C. App. 320, 477 S.E.2d 197
(1996).
6. As the result of his 11 July 2000 injury by accident, his 5 October 2000 injury by accident, and his related left arm and shoulder conditions, plaintiff is entitled to receive from defendants ongoing total disability compensation at the rate of $250.74 per week for the period of 18 May 2001 through the date of the hearing before the Deputy Commissioner and continuing until such time as he returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
7. As the result of his 11 July 2000 and 5 October 2000 injuries by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including the costs of plaintiff's self-referral to Dr. Supple on 18 May 2001. N.C. Gen. Stat. §§ 97-25; 97-25.1.
8. Because plaintiff's pursuit of this matter has been based upon reasonable grounds, defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $250.74 per week for the period of 18 May 2001 through the date of the hearing before the Deputy Commissioner and continuing until such time as he returns to work or until further order of the Commission. From the amounts having accrued, this shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred, but not the costs associated with the cancelled surgery on 12 September 2000.
3. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs.
This the ___ day of April, 2003
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER