**********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence. The Full Commission adopts the Opinion and Award of Deputy Commissioner Holmes with modifications.
 **********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. On the date of the alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At all times relevant to this claim, an employer-employee relationship existed between plaintiff and defendant.
3. Plaintiff sustained an admittedly compensable injury by accident while in the course and scope of his employment on January 10, 2005.
4. Federal Mutual Insurance Company was the carrier on the risk on January 10, 2005.
5. Plaintiff's applicable average weekly wage is $650.50 which yields a compensation rate of $433.66.
6. As of September 24, 2007, defendants have accepted compensability for plaintiff's persistent knee condition and have admitted that plaintiff's need for a total knee replacement was related to plaintiff's January 10, 2005 accident. The issue of disability remains disputed.
 **********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Full Commission, plaintiff was a fifty year-old high school graduate. Plaintiff has a certification in heating and air conditioning.
2. On January 10, 2005, plaintiff was 46 years old and was employed as a service technician by defendant-employer, a company that installs and services heating and air conditioning units. On January 10, 2005, plaintiff was standing on a ladder about fifteen (15) feet off the ground, holding a compressor on his shoulder, and attempting to step from the ladder onto the top of a commercial air conditioning unit. When plaintiff did so, his foot slipped and he *Page 3 
fell, sustaining injury to his left leg and knee. This injury was initially admitted as compensable by defendants.
3. After some initial treatment at Eastern Carolina Medical Center, on February 16, 2005 plaintiff came under the care of Dr. Jay R. Parikh, a Board Certified orthopaedic surgeon chosen by defendants to provide care to plaintiff. A left knee MRI was ordered which was performed on February 24, 2005 revealing a tear in the medial meniscus. On March 25, 2005 plaintiff underwent left knee arthroscopic surgery by Dr. Parikh with partial medial meniscectomy and chrondroplasty of the medial compartment.
4. Plaintiff did not return to work with defendant after the March 2005 surgery. Defendant terminated plaintiff for misconduct and for reasons unrelated to plaintiff's workers' compensation injury effective April 15, 2005. Plaintiff returned to full duty work with Stephenson Heating and Air on April 18, 2005. In June 2005, plaintiff was terminated by Stephenson Heating and Air. Although none of plaintiff's treating physicians have completely excused plaintiff from work, plaintiff has not worked in any employment since June 2005.
5. Both parties agreed that plaintiff had some problems while employed by defendant, and plaintiff fully admitted that the circumstances testified to by the employer were true. Barry Barbour, owner of defendant-employer, testified that, during the course of plaintiff's employment, plaintiff had engaged in unauthorized use of a company vehicle, cell phone overages, and unauthorized use of company credit. Specifically, an incident occurred while plaintiff was recovering from arthroscopic knee surgery in which he charged copper tubing to the corporate account of defendant. Plaintiff testified that he did this for a friend who was working as an independent contractor and who promised to pay the bill once the job was finished and he *Page 4 
received payment for the job. Plaintiff's friend did not pay the bill and plaintiff was threatened with embezzlement charges by defendant.
6. The Full Commission finds that plaintiff was terminated by defendant for misconduct unrelated to his work injury and that a nondisabled employee would have been terminated for the same circumstances. Although Barry Barbour testified that his company had full-time light duty jobs that plaintiff could perform, he also admitted that he would not hire someone who could not lift seventy (70) pounds or greater. Therefore, the Full Commission finds that defendant did not have suitable employment to which plaintiff could return but for his termination for misconduct.
7. On May 3, 2005, upon plaintiff's return to Dr. Parikh's office six weeks after surgery, plaintiff complained to Dr. Parikh's physician's assistant (P. A.) of continued pain and swelling along with instability in his knee. Plaintiff also indicated that he was back to work without restrictions, but he noticed that when he walked his knee would buckle and that it felt like he was hyperextending the knee. Plaintiff additionally reported that the knee pain was getting worse with time.
8. On June 23, 2005, plaintiff returned to Dr. Parikh's office and reported to the P.A. that he was still having quite a bit of pain. Physical examination revealed that plaintiff was very tender to palpation of his medial joint line. Plaintiff was given a Kenalog injection.
9. On September 28, 2005, plaintiff returned to Dr. Parikh's office and described continuing medial joint line pain. Plaintiff reported to the P.A. that he was still unable to climb stairs or stand on his feet for long periods of time. As of that visit, plaintiff was given permanent work restrictions of no lifting or carrying more than twenty (20) to fifty (50) pounds, no standing *Page 5 
more than thirty (30) minutes, no walking more than fifty (50) minutes, no climbing, no kneeling, no bending, and no stooping.
10. At plaintiff's October 27, 2005 return visit, Dr. Parikh noted that plaintiff's knee was giving out on him and was swollen at the end of the day. Dr. Parikh also noted plaintiff's report that he could not work. Dr. Parikh reported that the workers' compensation carrier had questioned whether the need for the current medical treatment was related to the previous surgery. On that date, Dr. Parikh noted, "I had a good discussion with the patient and arthritic changes he has in his knee, I do not think so it is work related. [sic] It is an ongoing process he has with wear and tear in his left knee." Based upon this comment by Dr. Parikh, defendants denied authorization for the September 28, 2005 visit and all subsequent treatment.
11. On December 15, 2005 plaintiff was examined by Dr. Parikh again. Dr. Parikh noted the following:
 I think, the patient has ongoing problem with his left knee with pain and swelling, which is related to the injury he had in 01/05. Previously, I have mentioned that it is not work related. I meant that his development of arthritis is not work related but as the patient continues to have ongoing pain in his knee and swelling, which has not got better completely after the surgery. I think, this should be treated as work related injury. I think, this is ongoing problem he had with work related injury he has in his left knee previously. I would recommend MRI of his left knee and I have discussed with the patient. Hopefully, workmen's compensation will authorize for that and I will be happy to answer any questions.
12. On January 3, 2006, defendants filed a Form 61 denying further benefits on the basis that plaintiff's treatment did not appear to be related to the January 10, 2005 workers' compensation injury.
13. On April 6, 2006 and May 2, 2006, Dr. Parikh noted in his opinion that plaintiff's condition was related to plaintiff's work injury of January 10, 2005. Further, Dr. Parikh noted *Page 6 
his recommendation for conservative treatment but cautioned that if conservative treatment failed, plaintiff may be a candidate for left total knee replacement.
14. On June 22, 2006, plaintiff presented to Dr. Mark Galland, a Board Certified orthopaedic surgeon, for a second opinion on treatment options. With regard to the causal relationship of plaintiff's pain complaints to the original injury, Dr. Galland noted the following:
 I have discussed with Mr. McLaren that although OA is usually of a long standing nature, it is not uncommon to be relatively asymptomatic as is the case in his situation only to become symptomatic and persistently so after an injury and I think this is very pertinent regarding his situation as he was asymptomatic prior to the injury and he sustained this injury and now his OA pain is unrelenting and is unable to be resolved with standard measures. . . .To reiterate, I think his current symptoms and complaints are related to the injury sustained on 1/10/05.
15. Thereafter, Dr. Galland began a course of conservative treatment that involved knee bracing and injections. On January 4, 2007, plaintiff reported that although his mobility and pain complaints were somewhat improved, he felt that his activity was far too limited to tolerate and that his pain was too significant in that it kept him awake at night and limited his activity during the day. Dr. Galland recommended that plaintiff schedule a left total knee replacement at the earliest possible opportunity.
16. Due to the limited success of conservative treatment, plaintiff underwent a left total knee arthroplasty performed by Dr. Galland on February 23, 2007. Post-surgically, plaintiff developed a staph infection in the knee and required aggressive medication treatment. Dr. Galland's post-surgical notes indicate that plaintiff has progressed well and has reported an improvement in pain complaints due to the surgery.
17. On May 3, 2007, Dr. Galland noted that plaintiff had not yet reached maximum medical improvement but that he was progressing nicely. As of that date, Dr. Galland cleared *Page 7 
plaintiff to return to sedentary light duty only with plaintiff eventually being able to tolerate a medium duty load.
18. Plaintiff returned to Dr. Galland on July 5, 2007 reporting that he was doing well. On that date, Dr. Galland noted that plaintiff was at maximum medical improvement and probably fit for light to medium duty in a sedentary occupation with limited climbing, no running, no kneeling, no forced squatting, and no lifting more than fifty (50) pounds. Additionally, Dr. Galland recommended that plaintiff be considered for vocational rehabilitation for retraining and re-education.
19. Plaintiff has not presented sufficient evidence that he was incapable of work in any employment, that he has looked for suitable employment, or that it would be futile for him to do so prior to January 4, 2007.
20. The Full Commission finds that based upon the greater weight of the competent and credible evidence that plaintiff was disabled from work from January 4, 2007 until May 3, 2007.
21. As a direct and proximate result of plaintiff's compensable injury, plaintiff sustained ongoing and persistent knee pain which required additional medical treatment by Dr. Parikh and Dr. Galland. The Full Commission finds that plaintiff's medical treatment by Dr. Parikh and Dr. Galland was related to his January 2005 work injury and that said treatment was reasonably necessary to effect a cure, provide relief, or lessen plaintiff's period of disability.
22. The Full Commission finds that defendants' original denial of additional medical treatment for plaintiff's knee condition does not rise to the level of stubborn and unfounded litigousness.
 ********** *Page 8 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident while working for defendant on or about January 10, 2005. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's medical treatment by Dr. Parikh and Dr. Galland including plaintiff's left total knee replacement were reasonably necessary to effect a cure, provide relief, or lessen plaintiff's period of disability. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his January 10, 2005 compensable injury to the extent it tends to effect a cure, give relief, or lessen plaintiff's disability. This includes all treatment provided in the past by Dr. Parikh and Dr. Galland and all treatment directed in the future by Dr. Galland. N.C. Gen. Stat. § 97-25.
3. Plaintiff's employment with defendant was terminated for misconduct or fault for which a non-injured employee would also have been terminated and for reasons unrelated to his compensable injuries by accident.Seagraves v. Austin Co. of Greensboro, 123 N.C. App 228, 472 S.E.2d 587
(1996). As defendant did not have suitable employment for plaintiff within his restrictions, plaintiff's termination does not constitute a constructive refusal of suitable employment. Id. *Page 9 
4. However, plaintiff maintains the burden of establishing disability. Plaintiff has failed to prove by the greater weight of the evidence that he was disabled from any employment following his January 10, 2005 work related injury and termination of employment with defendant or at any time prior to January 4, 2007. Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. It is well-settled that disability must be proven in one of four ways: (1) by the production of medical evidence that the employee is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) by production of evidence that the employee is capable of some work, but has after a reasonable effort been unsuccessful in his efforts to obtain employment; (3) by production of evidence that the employee is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) by the production of evidence that the employee has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). There is insufficient evidence that due to his work injury plaintiff was not capable of earning wages in any employment prior to January 4, 2007. Plaintiff has not shown any evidence of an unsuccessful job search despite reasonable efforts or that such a search would be futile. Therefore, plaintiff has failed to establish he was disabled from employment due to his compensable injury following his January 2005 injury and prior to January 4, 2007.
6. As the greater weight of the evidence proves that plaintiff was temporarily totally disabled from January 4, 2007 through May 3, 2007, plaintiff is entitled to receive temporary total disability compensation for the period from January 4, 2007 through May 3, 2007 at the rate of $433.66 per week. N.C. Gen. Stat. § 97-29. However, as plaintiff was released to return to *Page 10 
work following the April 17, 2007 hearing before the deputy commissioner, plaintiff has not had the opportunity to prove disability beyond May 3, 2007.
7. In the discretion of the Commission, defendants are not liable for attorney fees pursuant to N.C. Gen. Stat. § 88.1.
 **********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $433.66 per week for the period from January 4, 2007 through May 3, 2007.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as may be required to provide relief, effect a cure, or lessen plaintiff's period of disability.
3. A reasonable attorney fee of 25% of the compensation due plaintiff in paragraph one of this award is approved and shall be deducted from the amount owed plaintiff and paid directly to plaintiff's counsel.
4. Plaintiff is hereby ORDERED to participate in a Functional Capacity Evaluation (FCE) in order to determine any additional disability.
5. As plaintiff was released to return to work following the April 17, 2007 hearing before the deputy commissioner, plaintiff has not had the opportunity to prove disability beyond May 3, 2007. This case is hereby remanded to the Deputy Commissioner for the taking of additional evidence on plaintiff's disability following May 3, 2007, in addition to the FCE, including whether plaintiff has looked for work or if it would be futile for plaintiff to do so. *Page 11 
6. Defendants shall pay the costs, including an expert witness fee of $525.00 to Dr. Jay R. Parikh and $525.00 to Dr. Mar W. Galland, if not paid by prior order.
7. On February 5, 2008, plaintiff filed a Motion for Additional Evidence concerning a permanent partial disability rating by Dr. Galland. An Order was filed by Chair Pamela T. Young on February 19, 2008 holding plaintiff's motion in abeyance until consideration by the Full Commission at the hearing of this matter. As this matter is remanded to the Deputy Commissioner for the taking of additional evidence regarding plaintiff's disability, plaintiff's motion may be addressed by the Deputy Commissioner on remand.
This the 26th day of June 2008.
 S/___________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ PAMELA T. YOUNG CHAIR *Page 1