***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser.
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, defendants submitted the following:
a. An Orientation Booklet Receipt Acknowledgment Form, which was which was admitted into the record and marked as Defendant's Exhibit (1);
b. A Disciplinary Acknowledgement Form dated 17 March 2001, which was which was admitted into the record and marked as Defendant's Exhibit (2);
c. An Absentee Counseling Sheet dated 17 August 2004, which was which was admitted into the record and marked as Defendant's Exhibit (3);
d. An Employment Security Commission Appeals Decision, which was which was admitted into the record and marked as Defendant's Exhibit (4), and;
e. An Employment Security Commission Dismissal and Notice of Rights Form, was which was admitted into the record and marked as Defendant's Exhibit (5).
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record, and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over the parties and over the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and that there is no question as to misjoinder or non-joinder of parties.
3. The date of the alleged injury by accident is April 9, 2001.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties with defendant-employer being insured by Fireman's Fund Insurance Company.
5. Plaintiff's average weekly wage on the relevant dates was $482.51, which results in a compensation rate of $321.63.
4. Subsequent to the hearing, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2).
5. The issues to be determined are as follows:
a. Whether plaintiff sustained a compensable injury by accident, and if so, to what indemnity and medical compensation, if any, is he entitled;
b. What is plaintiff's percentage of permanent partial disability, if any;
c. Whether any disability plaintiff has is related to a compensable work-place injury; and,
d. Whether plaintiff constructively refused suitable employment.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-seven years of age, his date of birth being August 31, 1956. Plaintiff is a high school graduate, and has taken some college courses.
2. Plaintiff was not employed in any capacity as of the date of hearing before the Deputy Commissioner. Defendant-employer manufactures synthetic fibers. Plaintiff worked as a card operator for defendant-employer from March 12, 2000, until October 15, 2001. In that capacity, plaintiff worked with and maneuvered heavy bales of materials.
3. On April 9, 2001, while working for defendant-employer, plaintiff injured his back attempting to pull plastic from underneath a bale of fabric while bending over. At the hearing before the Deputy Commissioner, plaintiff testified that he experienced a snapping sensation in his back and the immediate onset of pain. Thereafter, plaintiff informed his supervisor of the incident and his condition. However, according to plaintiff's testimony, his supervisor did not immediately give him any direction as to how to proceed.
4. The Full Commission finds that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned on April 9, 2001.
5. On April 12, 2001, plaintiff sought medical attention from Dr. Daniel Ricci, who diagnosed plaintiff as having a back sprain after noting decreased lordotic curvature and tender paraspinal muscles. For plaintiff's condition, Dr. Ricci prescribed medication and physical therapy and released plaintiff to return to light-duty work in which he would be able to sit.
6. Thereafter, plaintiff returned to work for defendant-employer at his pre-injury wage as a twister operator, a job that was within his restrictions. Plaintiff began physical therapy on April 17, 2001. On April 23, 2001, Dr. Ricci referred plaintiff to an orthopedist and continued him on light-duty work.
7. On May 1, 2001, plaintiff was examined by Dr. Max Kasselt, an orthopaedic surgeon. Dr. Kasselt initially diagnosed plaintiff as having Lumbago, a condition that generally means an aching in the lumbar area of the back. Dr. Kasselt prescribed medications, provided plaintiff with a lumbar support, and instructed him on home exercise. Additionally, Dr. Kasselt continued plaintiff in his light-duty capacity and assigned restrictions of no repeated bending, stooping, or squatting, and no lifting, pulling, or pushing greater than fifteen (15) pounds. Plaintiff returned to Dr. Kasselt on May 8, 2001, and reported experiencing continued low back pain with intermittent radiating symptoms into the right leg and foot. Based upon these symptoms, Dr. Kasselt then ordered an MRI.
8. Upon reviewing the MRI results on June 14, 2001, Dr. Kasselt diagnosed plaintiff as having degenerative disc disease, disc dehydration, mild disc bulging at the L3-L4 and L4-L5 levels, mechanical back pain, and right sciatica. Dr. Kasselt further noted that psychological factors might be affecting plaintiff's condition. This was the first occasion on which Dr. Kasselt made any reference to psychological factors. However, Dr. Kasselt did not note what symptoms or observations upon which he based his conclusion regarding a psychological component of plaintiff's condition. For his back, plaintiff was sent to undergo additional physical therapy, and was continued on modified light-duty work.
9. Dr. Kasselt has opined that the degenerative disc disease and other conditions were pre-existing and were not caused by the April 9, 2001, work-place incident. Dr. Kasselt's diagnosis differed from that of the radiologist who performed the MRI, who opined that plaintiff might have an impingement on the exiting L4 nerve roots.
10. Having completed a second course of physical therapy, plaintiff returned to Dr. Kasselt on July 17, 2001. Dr. Kasselt advised plaintiff to continue home exercises, and again made reference to potential psychological conditions which may be affecting plaintiff's physical condition. Specifically, Dr. Kasselt opined that plaintiff had a conversion disorder, depression, an abnormally high focus on pain, and a somatoform disorder or malingering. Dr. Kasselt then referred plaintiff for a psychological exam and for a functional capacity evaluation.
11. The functional capacity evaluation was performed on August 10, 2001, and revealed that plaintiff was able to perform all work tasks at a light physical demand strength level, and two-thirds of work tasks at a medium physical demand. Regarding the evaluation, Dr. Kasselt has opined that the results were invalid because plaintiff did not put forth a maximum effort during the testing.
12. On August 14, 2001, plaintiff underwent a psychological evaluation with Gregory Gridley, Ph.D. During this appointment, plaintiff reported that since being on light duty, there had been indications at work that he may be terminated because of the amount and type of work he was able to perform. Plaintiff also reported that although he feared remaining in permanent pain, that he did not favor surgery at that time. Following his evaluation, Dr. Gridley opined that plaintiff did have a conversion disorder, that he had some tendency to have over controlled hostility, and that there might be malingering with clear secondary gain.
13. Following his functional capacity evaluation and psychological exam, plaintiff returned to Dr. Kasselt on August 17, 2001. Plaintiff reported that he was continuing to experience the same pain he had been experiencing over the preceding months. Despite this report of continued symptoms, Dr. Kasselt released plaintiff from his care, opined that he had reached maximum medical improvement. Additionally, Dr. Kasselt assigned a five percent (5%) permanent partial disability rating to plaintiff's back based on his degenerative disc disease, which Dr. Kasselt opined was neither caused or aggravated by his injury by accident.
14. Prior to plaintiff's injury by accident, defendant-employer had in place a No-Fault Point System that addressed employee absenteeism. Pursuant to this policy, if an employee accumulated forty-eight points in one consecutive twelve-month period, the employee would be terminated. Plaintiff was aware of this point system, although he contends other employee's had been treated with flexibility in the past. As of March 17, 2001, plaintiff had accumulated twenty-six points. On June 18, 2001, plaintiff was counseled regarding his absences having reached thirty-eight points. Plaintiff was again counseled on August 17, 2001, when he reached forty-two points. Thereafter, plaintiff missed work from October 11 through October 14, 2001, due to car problems he experienced while traveling out of state in Tennessee and Georgia. These absences placed plaintiff over the forty-eight point maximum, and he was terminated on October 15, 2001.
15. Based upon the totality of the credible evidence of record, the Full Commission finds that defendants have produced sufficient evidence upon which to find that plaintiff's termination on October 15, 2001, was for reasons unrelated to his April 9, 2001, injury by accident and was for misconduct or fault for which a non-disabled employee would also have been terminated.
16. Having been released while continuing to experience symptoms, plaintiff sought medical treatment from Dr. Barry Katz, a neurosurgeon, on November 28, 2001, which was authorized by defendants. Based upon his examination, Dr. Katz noted that plaintiff had moderate range of motion, and that his sensation was mildly decreased and worse in the posterior lateral aspect of the right leg. Dr. Katz opined that at the time of the appointment, plaintiff was not a candidate for surgery, but did recommend steroid injections and possible use of a pain clinic. Additionally, Dr. Katz assigned plaintiff had a seven percent (7%) permanent partial disability rating to his back.
17. Without approval by defendants, plaintiff sought additional medical treatment on his own with the Dr. Eddie Powell, an expert in internal medicine, on January 22, 2002. Plaintiff reported experiencing low back and bilateral leg pain, and numbness that he attributed to his April 9, 2001, injury by accident. Plaintiff further reported that his legs would occasionally buckle, and that he was experiencing severe coldness in his feet and decreasing use of his right leg. Following his examination, Dr. Powell noted that plaintiff had bilateral leg limping with right leg dragging. The neurological examination was within normal limits, except that there were no bilateral leg deep tendon reflexes, no right leg pinprick, and two-point sensation to the anterior groin at the posterior to the superior gluteal rim. Additionally, there was no pinprick or two-point sensation to the left anterior groin, and no Babinski response to the mid-posterior thigh. After also reviewing the prior MRI, Dr. Powell diagnosed plaintiff as having severe paresthesia due to lumbar spine herniated nucleus pulposus. Dr. Powell further opined that there existed multiple nerve root compression with disk material encroachment of the nerve roots and severe Lumbar Sacral polyradiculopathy, which is the inflammation or degeneration of spinal ganglions, and lumbar sacral nerve root compression. For plaintiff's back, Dr. Powell prescribed a lumbar sacral support brace. As for plaintiff's physical abilities, Dr. Powell has opined that plaintiff was totally disabled and unable to return to work.
18. Plaintiff continued to treat with Dr. Powell through June 2004. Throughout the period of Dr. Powell's treatment, plaintiff continued to experience, in greater severity, the same symptoms he had experienced since the date of his injury.
19. Based upon his deposition testimony, it is clear that Dr. Kasselt became frustrated with plaintiff during the course of his treatment and that he questioned plaintiff's credibility. While some degree of frustration may be reasonable, the Full Commission finds that the degree of hostility expressed by Dr. Kasselt is such that his opinions regarding causation should be afforded less weight as compared to those of Dr. Powell.
20. Based upon the totality of the credible evidence of record, the Full Commission finds that plaintiff has produced sufficient evidence upon which to find that his inability to earn wages subsequent to his termination on October 15, 2001, was causally related to his April 9, 2001, injury by accident. Accordingly, plaintiff did not constructively refuse suitable work with defendant-employer.
21. As the result of his April 9, 2001, injury by accident, plaintiff has been incapable of earning any wages in any employment for the period of October 15, 2001, through the present and continuing.
22. There is insufficient evidence of record upon which to find that plaintiff is totally and permanently disabled.
23. The treatment provided by Dr. Powell was reasonably necessary.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On April 9, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's termination on October 15, 2001, was for reasons unrelated to his April 9, 2001, injury by accident and was for misconduct or fault for which a non-disabled employee would also have been terminated.Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 587
(1996). Plaintiff has produced sufficient evidence upon which to find that his inability to earn wages subsequent to his termination on October 15, 2001 was causally related to his April 9, 2001 injury by accident. Id.
Accordingly, plaintiff did not constructively refuse suitable work with defendant-employer. Id.; and N.C. Gen. Stat. § 97-32.
3. As the result of his April 9, 2001, injury by accident, plaintiff is entitled to be paid by defendants ongoing temporary total disability compensation at the rate of $321.63 per week for the period of October 15, 2001, through the present and continuing until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. There is insufficient evidence of record upon which to conclude that plaintiff is totally and permanently disabled. Id.
5. As the result of his April 9, 2001, injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred, or to be incurred, including expenses related to treatment provided by or recommended by Dr. Powell. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing temporary total disability compensation at the rate of $321.63 per week for the period of October 15, 2001, through the present and continuing until such time as he returns to work or further Order of the Commission. The portion of this award that has accrued shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred, or to be incurred by plaintiff as the result of his April 9, 2001 injury by accident, including the expenses related to treatment provided by or recommended by Dr. Powell.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for plaintiff's counsel. The portion of this fee that is based upon compensation that has accrued shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff; thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs.
This 31st day of May 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER